MARTHA C. STIMMEL *v.* SAMUEL BROWN.

*Lateral Support by Adjacent Land—Excavation near Line—Establishment of Custom.*

When the owner of land commences to dig a cellar, or other excavation, along the division line between his land and that of a neighbor, he must take care to protect the soil of the latter from crumbling, or falling, by its own weight, into the cavity; otherwise he will be liable for the damage sustained.

It is a right incident to the ownership of land, that it shall be laterally supported by the adjacent land. If this support be removed, the owner thereof is entitled to damages in an amount sufficient to restore the property to as good a condition of lateral support as before the excavation.

The *amount* of damages must be proven before allowed by a jury.

A special custom becomes established when it has been used so long that the memory of man runneth not to the contrary.

The conflict of testimony of credible witnesses, inhabitants of the same city, repels the idea of an established custom.

(*New Castle, May 21, 1885.*)

ACTION ON THE CASE for injury to real estate by removing the lateral support to a house upon it. The circumstances upon which the action is based is as follows: The plaintiff is the owner of a lot and house at No. 820 Jefferson Street in the city of Wilmington, the latter being built on natural ground elevated about five feet above the street grade. The defendant, who is the owner of a lot adjoining on the north, had dug an excavation on his ground during the month of November, 1882, causing the fence and a three feet wide alley connected with the plaintiff's property to cave in and allowing it to remain in nearly the same condition until the present time, decreasing the amount of rental and the value of the property. Martha C. Stimmel, the plaintiff, testified to the facts as above set forth and that while the defendant was making the excavation, she complained to him about it, to which he replied that he was going to dig down as far as he pleased, and she would have to put up a brick wall on the line to prevent the alley from caving in on the line of it.

Other witnesses were examined by the counsel in the plaintiffs behalf as to the foregoing facts, and as to the amount of damages sustained by her, and the cost of a brick and stone wall necessary to support her ground and prevent it from caving in.

The defendant testified that he believed his action right in excavating as he had done, that neighbors told him he had a

right to dig down and grade the ground on his side perpendicularly up to the division line of their two lots, and the plaintiff would have to prevent her side from crumbling and caving in on his land.

Counsel for the defendant produced several witnesses, who were prominent builders and contractors of the city of Wilmington, by whom he proposed to prove that it was a universal custom in that city, that where the owner of an adjoining lot cut down his ground on the dividing line, as in this case, the adjoining owner has to build the wall to prevent his ground from crumbling and caving in on the other's land.

*Nields*, for the plaintiff, objected to admissibility of the evidence, and contended that according to the common law of England engrafted into the Delaware state constitution in 1776, lateral support to land was an evident right to-day, and that evidence of custom could not be admitted.

THE COURT admitted the evidence, and desired the question to be argued. Witnesses in behalf of the plaintiff were examined to prove a custom to the contrary.

*Benjamin Nields*, for the plaintiff: Lateral support is a common law right. *Dodd v. Samuel and James Holmes*, 28 Eny. Com. Law, 240 ; *Hilton v. Whitehead and Andrew* ; *Lasalan and others v. Halbrook*, 4 Paige Ch., 8. The plaintiff is entitled to damages arising from the falling of the natural soil, where caused by excavations made by the defendant. *Thurston v. Hancock*, 12 Mass., 220 (1815.) The right to lateral support must be regarded as an incident to the land. It is a right of property necessarily and naturally attached to the soil. It has been well said that the negative of this principle would be incompatible with the very security of property as it is obvious that if the neighboring owners might excavate their soil on every side up to the boundary line to an indefinite depth, land thus deprived of support on all sides could not stand by its own coherence alone. *Furand v. Marshall*, 19 Barb., 310; 211 Barb., 409 (1885).

There is an incident to land in its natural condition a right to support from the adjoining land ; and if land not subject to artificial pressure sinks or falls away in consequence of the removal of

such support, the owner is entitled to damages to the extent of the injury sustained. The measure of damages in such a case is not what it will cost to restore the lot to its former situation, or to build a wall to support it, but what the lot is diminished in value by reason of the acts of the defendant. 25 N. J., 356 (1 Dutcher, 1856.) Land is entitled to lateral support and it is not incumbent on the plaintiff to show that the excavation from which injury results was made in a careless, negligent and unskillful manner. *Foley v. Wyeth*, 2 Allen, Mass., 131, 1861. In a suit for unlawful excavations adjoining plaintiff's land, the cost of a wall necessary to prevent the land from caving is an element of damages. *U. S. Digest*, '82, 758 ; *Aaron v. Fox*, 78 Ind., 1.

A land-owner is entitled to the lateral support of the adjoining land in a public street and to damages for the removal of such support in grading the street. U. S. Digest, 82, 258 ; *Dyer v. St. Paul*, 27 Minn., 457.

If a person by carelessness in making an excavation in his own ground, caused the fall of or injury to a house erected on the land adjoining, he is liable in damages for the injury. *Balto. & Potomac R. R. v. Reaney*, 42 Md., 117 ; U. S. Digest, '76, 723.

*George Gray*, for the defendant : The custom must at least have existed long enough to be generally known, 1 Bouv. Law Dict., 463 ; 2 Greenl. Ev. Sec., 248, 249 ; *Harrison, J., opinion in Furand v. Marshall*, 19 Barb., 380 ; 4 Comst. Rep., 195, 202 ; 17 Johns, 92, and cites as to damages, 1 Compt. & Jorv. Exch. Rep. 29.

THE COURT, COMEGYS, C. J., charged the jury :

It would be reasonable to suppose that the question, raised in this case, had been, before, made in the courts of this State ; but there is no evidence to support such supposition, and therefore it is to be treated as a new one for decision. What are the rights, duties and liabilities of adjoining owners of real estate, with respect to each other, in matters concerning the use and enjoyment of such estate? That is such question. The plaintiff and defendant are, respectively, owners of lots of ground in the city of Wilmington on Jefferson street, between Eighth and Ninth streets, which

adjoin each other. They are small lots with a frontage on Jefferson street each of twenty feet. Prior to the act of the defendant, the consequences of which are the cause of action in this case, the lot of the plaintiff had been built upon by the erection of a dwelling house with back building and cellar, which constituted the residence of the plaintiff and her family. The grade of Jefferson street was about five feet below the level of the ground on which this house was erected—which ground was not disturbed as to its grade. In 1882, the defendant, desiring to build on his ground, and intending to conform his lot to the level of the street grade, proceeded to dig down his ground up to the dividing line between the two lots, in consequence of which the fence which the plaintiff had erected between them fell down and the earth crumbled also so much as to render her alley between the dwelling and the line practically use-less—the pavement upon it being displaced, and also a waste pipe, or conduit, for the discharge of surface water and the house drainage. To supply the service of the latter, it became necessary to make another drain, and this time it had to pass through the cellar. Access to the back building and from it to the street, was made so difficult by the damage, that the main building had to be used for that purpose. The dwelling house covered the breadth of the lot with the exception of three feet and a quarter of an inch ; and this was the width of the alley. While the excavation was going on, with the damage as it progressed, the plaintiff complained to the defendant of the consequences of his act and denied his right to dig away his soil up to the line without building a wall of stone to prevent the crumbling ; the defendant, on the other hand, insisted upon his right, and contended that if the plaintiff wished to pro-tect her property, she must do it at her own expense, as he was not bound to do it for her. Thus the parties raised themselves, out of court, an issue in law, and that issue has been transferred by them, by appropriate proceeding, to be tried and settled before and by us and you, in the tribunal of the Superior Court.

The case is one of unusual importance, as it presents, as has been before said, for the first time, the subject of the respective rights of owners of adjacent lots of land to the support each parcel is entitled to have from the other. Perhaps the best mode of in-

structing you about the law, is to give you examples where it applies.

Two men are owners, respectively, of adjoining lots in a city or town, which are both in their original state—that is, not built upon. One wishes to build, and chooses to do so, along the dividing line between himself and his neighbor. In the prosecution of his purpose, if he dig a cellar or make other excavation on the line, or near it, so that the soil of his neighbor, by its own weight, falls into it, he will be answerable for the damages, resulting therefrom, to his neighbor. But if his neighbor have placed some structure, or erected some building on his land, which falls or becomes injured by reason of its being erected so near the line as to contribute by its weight to the crumbling of the soil, he can recover nothing for such injury, in the absence of proof of carelessness, negligence, or unskillfulness in the execution of the work. This, however, does not apply in the case of a building, or structure which has been erected for more than twenty years; in which case, the owner has, in contemplation of law, the right of security against excavation upon the adjoining land after that period, the same as if one person had been, originally, the owner of both parcels, and granted one with the express right of erecting buildings upon it at or near the line as his grantee might choose, and that they should not be injured or affected by erections or excavations upon the other, and had granted that other, subject to the terms in the deed for the former.

By the law of the land, an owner of real estate has the right to all above and all below it; and, consequently, may do as he pleases with his own. But this right is subject to the qualification that he must not exercise it to the detriment, or injury, of an adjoining owner's right. An owner has the right to his own soil, but no more than his neighbor has to his soil. Therefore it is that in using or exercising this property right, no injury must be done to the others right. This is a maxim of the law. Hence when an owner commences to dig a cellar or otherwise along the division line between his land and that of a neighbor (which he has a perfect right to do) he must take care to protect the soil of the latter from crumbling, or falling, by its own weight, into the cavity. If he make such protection, then the land of the neighbor has received

no injury; but if such protection be not afforded, he is answerable for all damage resulting from such neglect; for, "among the rights which adjacent proprietors of lands may have to enjoy the benefit of their contiguity, is that of having one parcel laterally supported by the other. It is a right incident to the ownership of the respective lands, rather than an easement which one has in the other." *Washburne on Easements and Servitudes* (1863), page 429, Chap. IV.

To the plaintiff's complaint of grievance, the defendant pleads that he was justified in doing the act complained of, by reason of a special or particular custom, prevailing in the city of Wilmington, that in a case like the present, the party whose lot is to be injured by an excavation of contiguous soil, if he wished protection to his own soil against such excavation must furnish it himself, and with his own means. It is proper you should understand what, in law, a custom is; for the defence in this case is of this plea alone. There is no denial of the act done; it is admitted by the plea, which confesses it, but seeks to avoid the effect of it by reliance upon the alleged custom.

Customs are of two kinds—general and special. General customs are such as apply to the whole community or State; they are the common law of that State, or kingdom. Our ancestors who settled this country were chiefly English, and brought with them, for their government in the social state, the common law of England; that is, the law not passed by any legislative authority, but which had its origin in consent. Most of our law is of this nature. Wherever a free people "consent and use a certain rule or method as a law, such rule, etc., gives it the power of a law, and if it is *universal*, then it is the *common law*; if particular to this or that place, then it is *custom.*" *3 Salk, 112.* "As to the rise of customs, when a reasonable act once done was found to be good and beneficial to the people, then they did use it often, and, by frequent repetitions of the act, it became a custom, which being continued time out of mind, it obtained the force of a law to bind the particular places, persons and things concerned therein. This custom had beginning and grew to perfection." *Jac. Law Dic.*, Vol. 2, 171. But to make a special or particular custom good, it must "have been used so long that the memory of man runneth not to the contrary." *Co. Litt.*, 113. Thus, although it should be established

that a particular custom prevailed in any place, yet, if the origin of the custom could be shown to be within the legal period of memory (which is one of several hundred years), it would be no good custom. Id. But, to establish in any case a particular custom, it must appear in some way that it had its origin in *common consent;* the fact of its being disputed, at law or otherwise, is a proof that such consent was wanting. It must have been acquiesced in, and not subject to contention and dispute. *Co. Litt.*, 114.

With this statement of what is necessary to establish a particular custom, it is quite plain, if the plaintiff's witnesses are to be credited, that no such custom as that upon which the defence relies, exists. The fact of conflict of testimony by the witnesses, inhabitants of the city, repels the idea of custom, which is law by consent. There can be no consent, such as the maintenance of a custom requires, where some of the alleged consenting parties deny or dispute the custom. The defence therefore fails, and the sole question for you is, what amount of damages ought to be given to the plaintiff. You have heard a great deal of testimony upon this point. Looking at the matter from a general point of view, we say that the measure of damages is what it would have cost the plaintiff in May, 1883, the time when the suit was brought, to restore her property to as good a condition, and as good a state of protection by lateral support, as it had before the excavation was made. If you think, with many of the witnesses, that a stone wall was necessary to make such support, you may allow for such wall. You have been told what the expense of such restoration, stone wall and a fence upon it would be. The estimates do not vary much. You may also allow the plaintiff, if you think proper to do so, for any other damage she has shown to have been a necessary consequence of the defendant's act, provided the value or amount of such damage has been proved by the testimony, but you are not to consider any claim of damage unless proof not only of it has been satisfactorily made, but also of the value of it in dollars and cents. In no case of claim for damages in an action like this, are any, beyond the nominal verdict of six cents, to be allowed, unless proof be made of what they consisted, and their value or amount.

Verdict for the plaintiff.