The Wilmington City Railway Company, a corporation of the State of Delaware, defendant below, plaintiff in error, *vs.* James R. White, plaintiff below, defendant in error.

*Writ of Error—Personal Injuries—Pleading—Custom—City Railway—Much used Place—Stopping Cars to let Funeral Processions Pass; Need not be Pleaded; Admissible as Bearing on Contributory Negligence—Striking out Count; No Evidence to Support; Not Error—Variety of Counts—Same Cause of Action.*

1. Certain instructions of Court below on the question of negligence held to be proper.

2. In every action for negligence two things are requisite to entitle the plaintiff to a recovery; (1). negligence on the part of the defendant; and (2) due care on the part of the plaintiff. In every such action, the question "Whose negligence was the proximate cause of the injury com plained of?" is one which must be determined from the evidence, under all the facts and circumstances of the particular case. If there is any evidence of negligence on the part of the defendant, upon which the jury can properly find a verdict, or if the conclusion to be drawn therefrom is debatable, or rests in doubt, though the facts are undisputed, or if the evidence is conflicting in regard to any particular fact, the case should be submitted to the jury.

3. The practice of the defendant company to stop its cars and permit a funeral procession to pass without interruption was not a custom or usage which had the force and effect of a law, binding upon the company. It was a course of conduct, if it existed,in the nature of an accommodation indulgence or courtesy, prompted doubtless by considerations of respect, and if known among drivers in funeral processions to exist, it was competent to prove it, though it was not pleaded. If the plaintiff knew of the existence of such custom or usage, it was admissible in order that the jury might determine from all the facts and circumstances surrounding the case whether the plaintiff was at the time of the accident in the exercise of due care and caution.

4. Testimony showing that the street at the place where the accident occurred, was much used about the time of the day when the injury happened, is admissible, although not pleaded.

5. A variety of counts may be used in respect of the same cause of action.

6.   Various counts upon which issue has been taken and respecting which no evidence is introduced, is harmless to the defendant, and it is not error for the trial court to refuse to strike it out, the jury having been instructed to disregard it.

(*June* 18, 1907.)

NICHOLSON, CH., and SPRUANCE and BOYCE, J. J., sitting.

*Walter H. Hayes and Ward and Gray* for plaintiff in error.

*Levin Irving Handy* and *Herbert L. Rice* for defendant in error.

Supreme Court, January Term, 1907.

WRIT OF ERROR to the Superior Court for New Castle County.

BOYCE, J., delivering the opinion of the Court:

This action was brought in the Superior Court for New Castle County by James R. White, the plaintiff below, against The Wilmington City Railway Company, the defendant below, for the recovery of damages for personal injuries, alleged to have been occasioned by the negligence of the defendant company.

The plaintiff, in his declaration, containing, as amended, three counts, alleged that the defendant company negligently and carelessly (1) omitted to give reasonable notice of the approach of one of its cars in time to avoid a collision with a coach driven by the plaintiff; (2) so operated the car as to collide with the coach, whereby the plaintiff was hurled from the coach to the surface of the street and injured; and (3) used the car with defective brakes, and by reason thereof the collision and injury occurred.

The injuries complained of were caused by the collision of a car of the defendant company with a coach driven by the plaintiff, in a funeral procession, at the intersection of Tatnall Street

and West Fourth Street, in the City of Wilmington, between the hours of two and three, on the afternoon of April the twenty-seventh, A. D. 1904.

The plaintiff's coach was the fifth in order behind the hearse, and the procession was moving slowly and northward along Tatnall Street with four or five feet of space between the horses of one coach and the rear of the coach ahead. The car was approaching Tatnall Street on the eastward-bound track of the defendant company on West Fourth Street. West Street is west of, next to, and parallel with Tatnall Street. It is conceded that the distance between Tatnall and West Streets is about one hundred and ninety feet, and that the fall or down grade on Fourth Street from West to Tatnall is ten and nine-tenths feet in each hundred feet of the distance between them. The day upon which the accident occurred was said to be drizzly and rainy. Tatnall Street from building line to building line was shown to be forty-nine feet wide, and Fourth Street, eighty-two feet, six inches wide.

The defendant company has two tracks laid on Fourth Street. The plaintiff testified that he was an experienced driver; that he was sitting on the outside, and on a level with the top of his coach; that he first saw the car when he passed the building line on the southerly side of Fourth Street; that the car was then stopped with the hind part at the crossing on the east side of West Street; that he then looked towards Market Street and saw a car coming west; that he did not watch the car at West Street; that just before he reached the corner on the southerly side of Fourth Street, the driver ahead of him held out his hand to that part of the hill and signalled to the car to stay there, judging from the way he held his hand;that after he glanced at the car, he did not look at it again until he heard the ringing of the bell when his front wheel was on the first rail of the east-bound track and his horses had cleared the track; that the car was from eight to fifteen feet away from him; that he first heard the bell just before the car hit him. The speed of the car coming down the hill, was said to be from eight to twelve miles an hour.

The plaintiff, against objections and exceptions, was permitted to introduce evidence of a custom or usage of the defendant company to stop its cars to allow a funeral procession to pass across its tracks without interruption or break in the line; that he knew of the existence of the custom and that between two and three o'clock in the afternoon the wagon travel on Tatnall Street, at and near Fourth Street, was heavy.

There was some conflict of testimony respecting facts material to the issue.

When the plaintiff had rested his case, counsel for the defendant moved:

"*First.* That the third count of the plaintiff's declaration, as to defective machinery and appliances, be struck out, because there had been no evidence to support it; or

"*Second.* That as to the third count a nonsuit be entered for the lack of evidence to support it; or

"*Third.* That the jury be instructed to find a verdict for the defendant on the third count."

The Court overruled each of said motions and exceptions were noted. The defendant, having closed its testimony, counsel for the plaintiff abandoned the third count in his declaration. Respecting the said count, the Court said, in part: "The third count, as to defective machinery, is not before the jury and not to be considered by the jury."

Counsel for the defendant then requested "the Court to give the jury binding instructions to find a verdict for the defendant, on the remaining counts." The request was not granted, and the plaintiff had a verdict.

To the refusal of the Court to give binding instructions and to certain rulings as to the admission of testimony, the defendant took a bill of exceptions; and its counsel have assigned eleven errors. The first of these is: The Court below erred in refusing to instruct the jury to find a verdict for the defendant, because, as it was contended, the evidence disclosed (1) that the plaintiff was guilty of contributory negligence, and (2) that there was not

any breach of duty on the part of the motorman in charge of the car which the defendant owed to the plaintiff.

It was conceded that the Court below stated correct propositions of law in that part of its charge to the jury as follows:

"While the speed of trolley cars is not limited by law, yet in approaching such crossing it was the duty of the motorman to make the descent at such reasonable speed as not to put the car beyond his control; and as the danger of collision increased, if he saw or could see the danger, it was his duty to use all the means in his power to check or stop the car.—(*Price vs. Warner Co.*, 1 *Pennewill* 472.)

"This does not impose upon the motorman, however, an impossibility. If he in fact did all that he could to control the speed of the car, under the circumstances, the company would not be liable.

"It was, however, equally the duty of the plaintiff, the driver of the team, to use all reasonable care and precaution to prevent the accident.

"We will not attempt to specify the precise acts of precaution which are necessary to be done, or omitted by one in the management of an electric car, or by one in the management of or driving a wagon approaching a railway crossing. Such acts must depend upon the circumstances of each case, and the degree of care required differs in different cases. The general rule is that the person in the management of the car and the person driving the wagon are bound equally to the reasonable use of their sight and hearing for the prevention of accidents, and to the exercise of such reasonable caution as an ordinarily careful and prudent person would exercise under the circumstances of a particular case.

"A person approaching a railway crossing with which he is familiar, is bound to avail himself of his knowledge of the locality and act accordingly. If the approach of the railway to the crossing be down a steep grade, whereby it is more difficult to stop or check a car, the driver of the vehicle should exercise more care than might be necessary where the approach of the railway was

by a slight decline, upon a level, or by an ascending grade.   If as he approaches the crossing his line of vision is unobstructed, he is bound to look for approaching cars in time (if possible) to avoid collision with them, and if he does not look, and for this reason does not see an approaching car until it is too late to a- void a collision, he is guilty of negligence.

Snyder vs. Peoples Ry., 4 Pennewill 148–9. Brown vs. Railway Co., 1 Pennewill 336;

"Both the company and the driver of the team, the plaintiff in this case, were required to use such reasonable care as the circumstances demanded, an increase of care on the part of both being required when there is an increase of danger.

"The right of each one using the highway must be exercised with due regard to the right of the other, and in a reasonable and careful manner, so as not unreasonably or unnecessarily to abridge or interfere with the right of the other.

"Some of the witnesses have testified that they heard the car bell ring coming down the hill, others that they did not hear it ring.   The testimony of the former witnesses, is, of course, of more weight than that of those who merely say they did not hear the bell ring; which might reasonably be attributed to a want of attention at the time.   Such negative testimony is usually of little value.

(Q. A. R. R. Co. vs. Reed, 59 Atl. 863)." 5 Pennewill 226.

It was contended that these instructions, applied to the facts in the case, entitled the defendant to the peremptory instruction requested.

In every action for negligence two things are requisite to entitle the plaintiff to a recovery: (1) negligence on the part of the defendant; and (2) due care on the part of the plaintiff.   In every such action, the question "Whose negligence was the proximate cause of the injury complained of?" is one which must be determined from the evidence, under all the facts and circumstances of the particular case.

It is for the Court to say whether there is any evidence from which negligence, on the part of the defendant, or contributory

negligence, on the part of the plaintiff, can be reasonably and legitimately inferred; but it is for the jury to say whether from the evidence adduced, when submitted to them, any negligence, and whose, ought to be inferred.

*Creswell vs. W. & N. R. R. Co.*, 2 *Pennewill* 210. *Queen Anne's R. R. vs. Reed*, 5 *Pennewill* 228;

Whether the Court should (1) submit the case to the jury upon the evidence; or (2) should order a nonsuit when the plaintiff has rested his case, or direct a verdict for the defendant, if the plaintiff should decline to take a nonsuit; or (3) should direct a verdict for either the plaintiff or the defendant at the close of the testimony, must depend upon the state of the evidence in the particular case, at each stage thereof.

If, in the absence of contributory negligence on the part of the plaintiff, there is any evidence of negligence, on the part of the defendant, upon which the jury can properly find a verdict, or if the conclusion to be drawn therefrom is debatable, or rests in doubt, though the facts are undisputed, or if the evidence is conflicting in regard to any material fact, the case should be submitted to the jury.

If the plaintiff fails to produce any evidence of negligence, on the part of the defendant, or if, as it has been said, it is manifest as a conclusion of fact or by necessary inference that those acts which the law regards as negligent have not been shown, or if proof of contributory negligence arise out of the testimony of the plaintiff, in the first instance, it is the duty of the Court to nonsuit the plaintiff.

If, notwithstanding proof of the negligence of the defendant, it obviously appears, at the close of the testimony, that the injury complained of was due to the fault or negligence of the plaintiff, it is the duty of the Court to direct a verdict for the defendant.

It is quite impossible to lay down any well-defined rule by which to determine whether the question of contributory negligence should be found, as a conclusion of law, upon the facts presented; and the Court will not decide the question without the

aid of the jury, if the conclusion to be drawn therefrom is doubtful and uncertain.

  *Queen Anne's R. R. vs. Reed, supra.*

The Court in submitting this case to the jury charged them upon the law of negligence as follows: "The gist of this action is negligence, and the burden of proving the negligence of the defendant company rests upon the plaintiff in this case. If there was no negligence on the part of the company, your verdict should be for the defendant. Even if there was negligence on the part of the defendant, yet if the negligence of the plaintiff contributed to the accident, or was the proximate cause thereof, your verdict should be for the defendant; for he would, in that case, be guilty of contributory negligence. If you believe that at the time of the accident each party was using such reasonable care as the circumstances demanded, then the collision was simply an unavoidable accident and the plaintiff could not recover."

The third, fourth, fifth, sixth and seventh assignments of error were considered together. They each related to the admission of evidence, on behalf of the plaintiff, against objections and exceptions, respecting "a custom, general and uniform, established by the defendant company for its trolley cars to stop and allow a funeral procession to pass across its tracks without interruption."

The custom was not pleaded. And it was contended that it was not competent to prove it without being pleaded. In overruling the objection, the Court said:

"In the case of *Foulke vs. Wilmington City Railway Company* (5 *Pennewill*, 363) we admitted this same question upon the ground that while there was no duty resting upon the defendant company to stop and allow funeral processions to pass, yet if they had been in the habit of doing it, and thereby induced, on the part of the drivers who were familiar with the custom, the belief that they would stop, it entered into the question of the driver's negligence". * * * * "We don't think it is necessary to be alleged in the declaration". And in their charge to the jury, respecting this matter, this Court further said:

"We know of no law requiring a trolley car to stop at the intersection of streets and wait until a funeral procession has passed; nor of any law giving to a funeral procession the right of way over cars or other vehicles or persons properly using a highway of this State.     If by courtesy such privilege has been given by trolley cars and by others using the highway, such courtesy imposes no duty upon the person extending the courtesy, nor does it in any manner relieve such person from all reasonable care and precaution in so using the highway as to prevent accident or injury.

"If you should find from the evidence in this case, that the uniform and continuous usage or practice of the defendant company had been to stop its cars at crossings and wait until a funeral procession passed by, and that such usage was known to and relied upon by the driver, the plaintiff in this case, at the time of the accident; we say to you that such method of dealing with the public on the part of the company, and so known to the driver, may be taken into account by you in estimating the degree of diligence required of the plaintiff in looking out for an approaching car before he crossed the railway track; for in such case he might reasonably presume or infer the continuance of that usage.

"To justify such presumption, however, such usage must have been uniform and continuous; even then the failure to observe such usage would not amount to negligence on the part of the defendant company.   It would not relieve the driver of reasonable care in making such crossing.   He would have no right so to presume, if he actually saw the car coming down upon him; or if by the reasonable use of his senses he might have seen its approach.

"It may be stated that, as a general rule, no legal right can grow out of mere courtesy, however uniform and long continued; nor will such courtesy impose a legal obligation upon the person extending it."

We will add that the word "custom" is sometimes used synonymously with "usage", meaning a course of dealing which derives its legal force from assent, express or implied; again, as

something which by long usage or judicial sanction has acquired the force of law and is binding without regard to the question of assent.

29 *A. & E. Ency. of Law*  367.

Usage in its most exclusive meaning includes custom, but in its narrower signification it refers to a general habit, mode or course of procedure.

12 *Cyc.* 1030.

Customs are of two kinds, general and particular.

*Stimmel vs. Brown, 7 Houst.* 219.

A general custom need not be pleaded, but a custom obtaining only in a particular district or neighborhood must be pleaded.

*Templeman vs. Sawyer,* 1 *Harr.* 522.

The alleged practice of the defendant company to stop its cars and permit a funeral procession to pass without interruption was not a custom or usage which had the force and effect of a law, binding upon the defendant company.  It was a course of conduct, if it existed, in the nature of an accommodation indulgence or courtesy, prompted, doubtless, by considerations of respect, and if known among drivers in funeral processions to exist, it was competent to prove it, though it was not pleaded.

In the case of *Martin vs. B. & P. R. R. Co.,* 2 *Mar.* 123, it was held that where a traveler knows that a flagman is habitually stationed at a crossing, and upon looking, finds that the flagman is not at his post giving signals of danger, he has a right to assume that a train is not about to pass.  But the absence or negligence of the flagman will not excuse the person about to cross the track from using every reasonable precaution that an ordinarily prudent and careful person would use.

It appearing that the plaintiff had knowledge of the existence of the alleged usage or practice on the part of the defendant company, at and before the time of the accident, evidence of such practice was properly admitted, in order that the jury might determine from all the facts and circumstances surrounding the case whether the plaintiff was, at the time of the accident, in the

exercise of due care and caution. What will constitute negligence or want of due care may depend upon the observance or non-observance of a usage or practice known to exist under particular circumstances.

The eighth, ninth and tenth assignments of error were considered together. They each related to the admission of evidence on behalf of the plaintiff, against objections and exceptions, respecting "the condition of travel on Tatnall Street, whether said street was much used at its intersection with West Fourth Street, on or about the twenty-seventh day of April, 1904, between two and four o'clock in the afternoon". The matter of travel was not pleaded. It was not necessary to do so in order to give evidence of it. As tending to show the necessity for a greater degree of care on the part of the servants of the defendant company at the time and place of the accident, the evidence was competent.

The eleventh assignment of error relates to the action of the Court in overruling the said motion made by counsel for the defendant respecting the third count in plaintiff's declaration. In practice, a variety of counts often occurs in respect of the same cause of action; the law not having set any limits to the discretion of the pleader, in this respect, if fairly and reasonably excercised.

*Steph. on Plead.*, 258.

The pleadings in a case are not evidence of the matters pleaded. And a count in a declaration upon which issue has been taken and respecting which no evidence is introduced at the trial, is harmless to the defendant upon the merits of the case. In this case, the count was abandoned by the plaintiff, and the jury were instructed by the Court to disregard the count altogether. For any reason shown, the Court did not err in overruling the said several motions respecting the said count.

After a careful examination and consideration of the record and briefs of counsel, and in view of the conflict of testimony with regard to some material facts in issue, it is not obvious that there was such an entire absence of negligence on the part of the

servants of the defendant company, on the one hand, or that there was such contributory negligence, on the part of the plaintiff, on the other, as that it was the duty of the Court to direct a verdict for the defendant.    Under all the circumstances surrounding this case, it is the opinion of this Court that the question as to whose negligence, if any, was the proximate cause of the accident was properly submitted to the jury under the instructions given by the Court below.    And the judgment of the Court below is, therefore, affirmed.