# MELVIN GREER, Appellee, v. EMMETT R. UNDERWOOD, Appellant.

# ROBBYE GREER, Appellee, v. EMMETT R. UNDERWOOD, Appellant.
## —461 S.W.2d 35.

Western Section. March 10, 1970.

Certiorari Denied by Supreme Court September 8, 1970.

William I. McLain, Memphis, Joe H. Walker, Jr., Ripley, for appellant.

A. V. McDowell, Memphis, for appellees.

CARNEY, P. J.   Upon the trial below a jury returned a verdict in favor of the plaintiff, Mrs. Robbye Greer, in the amount of $2,000.00 for personal injuries and a verdict in favor of her husband, Melvin Greer, for $2,995.65. Mr. Greer's verdict included $1,981.85 automobile damage, personal injuries, medical expenses and loss of consortium by the husband. The plaintiffs are residents of Memphis, Shelby County, Tennessee. The defendant, Emmett R. Underwood, is a citizen and resident of Lauderdale County, Tennessee.

The suits arose out of an automobile accident which occurred on April 4, 1966, at the intersection of new U.S. Highway 51 and Cedar Grove Road, a county blacktop road, about 2 miles north of Ripley in Lauderdale County, Tennessee. Plaintiffs Melvin Greer and wife were traveling southward in an automobile driven by Mr. Greer along new U.S. Highway 51. The defendant, Mr. E. R. Underwood, was traveling west along the Cedar Grove Road toward his home located at the northwest corner of the intersection of new Highway 51 and Cedar Grove Road. Defendant E. R. Underwood has appealed from both judgments and assigned error.

When these cases came on to be argued, attorney for appellant filed a written stipulation signed by attorneys for all parties which recited that at the conclusion of the general charge by the Trial Judge upon the trial below, the defendant, E. R. Underwood, seasonably submitted to the court fifteen special requests which were refused, marked "Denied" and signed by the Trial Judge. The charges were attached to the stipulation. The stipulation further recited that by oversight the special requests

were omitted from the bill of exceptions and transcript of the record in these causes and that it was agreed that the fifteen special requests were made a part of the bill of exceptions and transcript of the record in these causes to the same extent as if they had been originally included therein. Attorney for appellant also submitted to the court a proposed consent order which recited the filing of the stipulation and requested that the order be entered upon the minutes of this court. This request was taken under advisement to be decided along with the other issues raised by the appeal.

Attorney for appellant cites and relies upon cases of Campbell v. Francis, 53 Tenn.App. 80, 378 S.W.2d 790, and Gordon's Transports v. Bailey, 41 Tenn.App. 365, 294 S.W.2d 313. These cases do in fact recognize the rule that stipulations and/or admissions of fact may be made by the parties in this court and such stipulations or admissions may be considered by the appellate court in the determination of the appeal even though said facts and/or admissions were not contained in the bill of exceptions or in the transcript of the record. Neither of the two cases cited is authority that a bill of exceptions may be amended in the appellate court by stipulation of the parties. Each case contains language to the contrary.

Assignments of error complaining of refusal of the Trial Court to give special requests are not reviewable where special requests are not made part of the bill of exceptions. Jennings v. Riddle, 20 Tenn. App. 89, 95 S.W.2d 946; Sweeney v. Carter, 24 Tenn. App. 6, 137 S.W.2d 892.

The charge of the court when not included in the bill of exceptions cannot be made part of the record on appeal

by consent of counsel even though certified by signature of the Trial Judge that the document is a correct copy of the charge of the court. Cosmopolitan Life Ins. Co. v. Woodward, (1928), 7 Tenn.App. 394.

Affidavits and certificates cannot be used to add to or alter the bill of exceptions in the transcript even if they are signed by the Trial Judge. Thomas v. State, (1960), 206 Tenn. 633, 337 S.W.2d 1.

█ The request to enter the consent order upon the minutes of the court is overruled. The special request filed with the stipulation cannot be considered by this court because they are not part of the bill of exceptions and, therefore, not legally a part of the record before this court.

█ Assignment of error No. II that the verdict is contrary to the law and the evidence does not present a proper assignment of error and the same is overruled.

Assignment of error No. I that there was no evidence to support the verdict and assignment of error No. III that the plaintiffs were both guilty of proximate contributory negligence as a matter of law require a review of the evidence.

At the time of the accident new U.S. Highway 51 was still under construction from Ripley northward to State Highway 88 and had not been formally opened for traffic. It was a four-lane highway with two northbound traffic lanes, two south-bound traffic lanes and a median grassy strip. New Highway 51 was open for traffic northward from Tennessee Highway 88 to Dyersburg. Highway 88 is about 10 miles north of Ripley. New Highway 51 southward from Highway 88 to Ripley was almost completed.

One additional layer of blacktop remained to be laid and lanes and borderlines had not been painted on the roadways at the time of the accident. In spite of signs saying "Road Closed" many cars traveled over the new highway.

The plaintiff, Melvin Greer, had been to Newbern to his brother's funeral and was returning late in the afternoon to his home in Memphis, Tennessee, along new U.S. Highway 51. When he approached the intersection of Tennessee Highway 88 which consisted of an overpass across U.S. Highway 51, he was directed by traffic signs to the right up on State Highway 88. He saw no barricades across the roadway from Tennessee Highway 88 leading southward into the southbound traffic lanes of U.S. Highway 51 and Mr. Greer drove from State Highway 88 on down southward into new U.S. Highway 51 in the west or southbound traffic lane. He saw other traffic on the highway going both north and south.

Mr. Greer had followed the same route on the day before when he went to Newbern after hearing of his brother's death. None of the intersections of county roads across new U.S. Highway 51 southward from State Highway 88 to Ripley were barricaded. All four lanes were open all the way from State Highway 88 southward through the Cedar Grove Road intersection about one mile further south when the new Highway 51 ended. There were "Road Closed" signs and other signs over in the median and along the side of the highway to indicate that the U. S. Highway had not been formally opened to all traffic and that the contractor was still doing work along the highway.

Mr. Greer testified that as he approached the intersection of Cedar Grove Road and Highway 51, he saw the

car driven by Mr. Underwood about one-fourth mile away coming from his left or the east side of U. S. Highway 51; that he thought Mr. Underwood would stop at the median strip and allow the plaintiff Greer to pass on southward in front of him; that Mr. Underwood didn't stop but instead ran into the left side of the Greer car striking it near the driver's seat. The right front of the Underwood car was damaged. Mr. Greer testified that he was about two or three car-lengths away from Mr. Underwood when he realized that. Mr. Underwood was not going to stop. He applied his brakes and swerved to the right.

Mr. Greer had made some three trips up new U. S. Highway 51 turning off in the Town of Ripley and reaching the south end of the new U. S. Highway 51 and following U. S. Highway 51 all the way to Dyersburg. He admitted seeing a sign as he approached State Highway 88 traveling south which recited, "Divided Highway Ends," saw a barricade across the two southbound lanes of Highway 51 at the intersection with Highway 88. He also admitted that there was a highway sign with the figure 51 on it and an arrow indicating that he should follow 88 eastward toward Halls to follow old 51 but that he disregarded those signs and traveled on southward along U. S. Highway 51. On cross-examination Mr. Greer admitted that one of his hands was missing; that he saw Mr. Underwood traveling slowly across the northbound traffic lanes and he took his foot off the accelerator but did not blow his horn; that his wife, Mrs. Greer, and possibly another passenger, Mrs. Thompson, commented, "I don't believe he's going to stop," and that at this time Mr. Greer applied his brakes and tried to swerve to the right but it was too late and Mr. Underwood's car struck him on the left side near the door. Greer was

traveling from 50 to 60 miles per hour in the left or easternmost southbound lane.

The defendant, E. R. Underwood, retired after 34 years as a rural mail carrier and was running a green house. He owned land north of Cedar Grove Road which was taken by new Highway 51. The right-of-way was 250 feet wide. He lived in the northwest corner of the intersection. Mr. Underwood testified that he had driven up new Highway 51 several times prior to the accident; that the traveling public were using new Highway 51 and one half usually stopped at the intersection of Cedar Grove Road but the construction company vehicles did not usually stop; there had been stop signs on Cedar Grove Road from the intersection of new Highway 51 several months prior to the accident but on the day of the accident they were down. He had been to Ripley via Cedar Grove Road and old Highway 51 and was returning home. The weather was clear. Mr. Underwood said he stopped at the east side of the intersection with the intention of yielding the right-of-way to traffic on new Highway 51; that he could see about four tenths of a mile up new Highway 51 to the north; that he saw no traffic coming from either direction and started on westward across the four traffic lanes slowly about 10 to 12 miles per hour and was struck as he reached the southbound lanes of the intersection. He never saw Mr. Greer's automobile until the collision.

Tennessee Highway Patrolman Billy Wayne Williams, who investigated the collision, testified that the Pontiac of Mr. Greer laid down 26 yards of skid marks before the point of impact and 15 yards after the impact; they veered from inside the southbound lane next to the median westward to the outside; that Mr. Underwood's Dodge laid down 5 feet of skid marks before the impact

and his car then spun around and came to rest facing north about 10 yards from the impact point.

■ We think reasonable minds might differ as to whether or not Mr. Greer and his wife, Mrs. Robbye Greer, were guilty of acts which proximately caused or contributed to their injuries and whether Mr. Underwood was guilty of proximate common law negligence. Therefore, these questions were properly left by His Honor the Trial Judge to the jury. Assignments of error I and II are, therefore, respectfully overruled.

Assignments of error IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, and XVIII all relate to the refusal of His Honor the Trial Judge to give in charge the several special requests described above not included in the bill of exceptions before this court. The special requests cannot be considered for the reasons set out above. The assignments of error thereon are overruled.

There remains assignment of error No. XVII which is as follows:

"The Court erred in instructing the jury as follows:

'It is alleged on behalf of the Plaintiff that the defendant violated one or more of certain statutes in the operation of his automobile and in the following particulars.

'I read from statutes that both Plaintiff and Defendant say that the other parties violated.

'The Plaintiff says that the Defendant violated:

'Section 59-828:—Vehicle Approaching or Entering Intersection:

'The driver of a vehicle approaching an intersection shall yield the right-of-way to vehicle which is entering the intersection from a different highway. When two vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right.

'Section 59-830:—Vehicle Entering Through Highway or Stop Intersection:

'The driver of a vehicle shall stop as required by 59-849 at the entrance to a through highway and shall yield the right-of-way to vehicles which have entered the intersection from said through highway or which are approaching so close and into said through highway as to constitute an immediate hazard but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection or said through highway shall yield the right-of-way to the vehicle so proceeding into and across through highway.' ''

In support of this assignment of error the appellant cites and relies upon the case of Carlisle v. Cobb Bros. Construction Co., (1960), 238 Miss. 681, 119 So.2d 918. In the Carlisle case there was a collision between an automobile driven by appellant Carlisle and a truck driven by appellee Brown working for appellee Cobb Bros. Construction Company. The accident occurred at the intersection of a public road running north and south and a new Highway 19 which ran east and west and was under construction at the time of the collision. The Trial Judge gave the jury a special charge in accordance with the Mississippi statute similar to our T.C.A. Section 59-828

that vehicles on public highways approaching an intersection have the right-of-way over those approaching an intersection from the left. The Mississippi Supreme Court held this to be reversible error.

From the appellant's brief we copy as follows:

"The defendant contends the trial court also committed reversible error in refusing to charge the jury T.C.A. Section 59-831 giving the right of way to a vehicle on a public highway over one entering or crossing a highway from a private road or driveway

A private road or driveway is defined in T.C.A. Section 59-801 as: 'Every way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner, but not by other persons.'

Precisely the same question was presented in the case of Curtis v. Lawley, 140 Colo. 476, 346 P.2d 579, decided by the Supreme Court of Colorado En Banc on October 26, 1959, rehearing denied December 7, 1959.

The Curtis case was a wrongful death action arising out of an automobile collision at an intersection between a highway open to public travel and a highway under construction and not open to public travel. The court held that the action should have been tried as one in which a private roadway and a public highway intersected and not as one involving an intersection of two public highways. Further, that instructions quoting statutes which impose duties upon drivers operating vehicles over public highways were improper.

On page 581 of the opinion, Justice Frantz, speaking for the Colorado Supreme Court, said:

'The evidence in the present case shows that the highway was under construction and not open to the public "for purposes of vehicular travel." In fact, Northwestern tried to keep the public ("tourists and anyone that don't belong in there") off the project because it would interfere with the work of construction. The west lane, the lane over which Mr. Lawley was driving, was being used by the employees and the State Highway Department in connection with the said construction. Under these circumstances the highway under construction comes within the statutory definition of a private way.'

'It is the law that statutory rules of the road for public highways are inapplicable to private roadways. "Statutes and rules of the road are designed to govern traffic upon highways that are prepared for use as such, for public convenience and safety; and are applicable only to permanent lines of travel." They have no application "to parts of the road under construction, where changing conditions would not permit orderly travel under established rules." (Citing Colorado and other cases)'

'The statutory requirement that one traveling on a public highway has the right of way over one entering the highway from a private road is but a reaffirmation of the rule of the road. (Citing cases)'

It should be observed that the Colorado statutory definition of a public highway is exactly the same as T.C.A. Section 59-801. Under the Colorado statute, a private roadway is defined as: '* * * every road or driveway not open to the use of the public for purposes of vehicular travel.' "

Immediately following the charge by the Judge of T.C.A. Section 59-828 and 59-830 His Honor the Trial Judge stated that the defendant asked that these statutes be charged and then charged T.C.A. Section 59-801 and 59-802 as follows:

"59-801.  Definitions.—

\*    \*    \*    \*    \*    \*

HIGHWAY. The entire width between the boundary lines of every way publicly maintained when any part thereto is open to the use of the public for purposes of vehicular travel."

"59-802. Provisions refer to vehicles upon highways —Exceptions.—The provisions of chapters 8 and 10 of this title relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways except where a different place is specifically referred to in a given section."

The record in this case shows that the defendant, Mr. Underwood, fully understood that new Highway 51 in the area near Cedar Grove Road crossing was used by a large number of vehicles and that the defendant considered the intersection of the Cedar Grove Road and new Highway 51 as a regular highway intersection even though some construction vehicles still used the new highway.

We hold that U. S. Highway 51, even though still under construction in the area of the accident, namely the crossing of Cedar Grove county road, was in fact a public highway and in no sense a private roadway or driveway. The statutes applicable to public highways and public intersections were applicable. The cases of Carlisle v.

Cobb Bros. and Curtis v. Lawley cited above by the appellant are not controlling.

Assuming that we are in error in holding that area of the accident to constitute a public highway and assuming that His Honor the Trial Judge was in error in charging T.C.A. Sections 59-828 and 59-830 above quoted, assignment of error XVII must still be overruled because such error would be at most harmless error. T.C.A. Section 27-117.

There was ample evidence in the record from which the jury might reasonably have found the defendant guilty of proximate common law negligence and thus sustain the validity of the verdicts rendered against the defendant. It does not affirmatively appear that the error of the Trial Judge in charging the two sections above referred to affected the results of the trial.

All of the assignments of error are, therefore, respectfully overruled and the judgments of the lower court are affirmed with interest. The costs of the appeal are taxed against the defendant and his sureties.

Matherne and Taylor, JJ., concur.