Mrs. Maggie SCARBROUGH, Plaintiff-Appellant,

v.

The CITY OF LEWISBURG and the Lewisburg Gas Board, Defendant-Appellee.

Court of Appeals of Tennessee,
Middle Section.

June 29, 1973.

Certiorari Denied by Supreme Court
Feb. 4, 1974.

Robin Courtney, Courtney, Trost, Leech & Hardin, Columbia, for plaintiff-appellant.

Walter W. Bussart, Lewisburg, for defendant-appellee.

TODD, Judge.

## OPINION

The plaintiff, Mrs. Maggie Scarbrough, has appealed from a jury verdict and judgment dismissing her suit against the defendants, The City of Lewisburg and the Lewisburg Gas Board, for personal injuries and damage to real and personal property suffered in an explosion and fire at her residence on November 20, 1970.

This suit was filed on June 30, 1971, hence Tennessee Rules of Civil Procedure, effective January 1, 1971, are applicable.

The first assignment of error is as follows:

### I.

"The Court erred in failing to require the Defendants to answer properly the Plaintiff's Request for Admissions submitted to the Defendants pursuant to Rule 36 of the Tennessee Rules of Civil Procedure and the Defendants failed to comply with said Rule by refusing to admit certain factual matters raised by the Request."

On April 26, 1972, plaintiff mailed to defense counsel, and on April 28, 1972, plaintiff filed the following "Request for Admissions."

"Pursuant to Rule 36 of the Tennessee Rules of Civil Procedure, the Plaintiff does hereby request from the Defendant the admission of the following relevant matters of fact:

1. That the explosion which occurred on November 20, 1970 at the residence of the Plaintiff located on 301 North Woods Avenue, Lewisburg, Tennessee, resulted from the ignition of natural gas vapors.

2. That the fire which followed the explosion at said residence resulted from the ignition of natural gas vapors.

3. That these natural gas vapors resulted from natural gas which escaped from the gas main owned and maintained by the Defendant, Lewisburg Gas Company, which was located under the pavement of North Woods Avenue in front of the home of the Plaintiff.

4. That the gas which escaped from the main resulted from a break in the main, which was broken completely into two segments.

5. The gas escaped from this break in the main, underground, and followed utility lines likewise located underground into the basement of the residence of the Plaintiff located at 301 North Woods Avenue where they accumulated, and ascended into the first floor of the Plaintiff's residence and mixed with air until they reached flammable proportions.

6. That the Defendant Gas Company has no record of making routine inspections or examinations of this gas main located in the street along North Woods Avenue since its installation in 19___."

Defendants' response to said request, filed on May 25, 1972, was as follows:

"1. Defendant admits that the explosion occurred on November 20, 1970 at the residence of the plaintiff located on 301 North Woods Avenue in Lewisburg, Tennessee. Defendant denies that the explosion resulted from the ignition of natural gas vapors.

2. Defendant denies statements 2, 3, 4, 5, and 6 of plaintiff's requests except defendant admits there was a break in the main on Woods Avenue after the accident."

Subsequently, on June 1, 1972, defendants filed the following supplemental response.

"1. Defendant cannot admit that the explosion and fire was caused by gas which escaped from its main in front of plaintiff's residence and travelled underground into her house and ignited, because it does not know whether these matters are true or false. Defendant avers that the burden of proof is on the plaintiff to establish these facts by preponderance of the evidence and that the fire and explosion could have been caused by a number of sources. That the source of the gas could have been from a number of sources also, and that evidence will be introduced which shows that it did not come from a broken main.

"2. Defendant further does not admit the above mentioned matters because said admission is improper in accordance with Rules of Civil Procedure 3601 in that it invades the province of the jury as to the ultimate facts in the case.

"Defendant, through his attorney of record, Walter Bussart, does hereby make oath that the foregoing statements are true to the best of his knowledge, information, belief, and judgment."

Plaintiff relies upon the fact that defendant's first response, supra, was unsworn and the second was sworn to by counsel.

Rule 36.01, Rules of Civil Procedure, provides (in part):

*"Rule 36. Admission of Facts and of Genuineness of Documents*

36.01 . . . .
*Each of the matters of which an admission is requested shall be deemed admitted unless,* within a period designated in the request, not less than fifteen days after service thereof or within such shorter or longer time as the court may allow on motion and notice, the party to whom the request is directed serves upon the party requesting the admission either (a) a sworn statement denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters or (b) written objections on the ground that some or all of the requested admissions are privileged or irrelevant or that the request is otherwise improper in whole or in part, together with a notice of hearing the objections at the earliest practicable time. If written objections to a part of the request are made, the remainder of the request shall be answered within the period designated in the request. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party deny only a part or a qualification of a matter of which an admission is requested, he shall specify so much of it as is true and deny only the remainder."

■ Plaintiff's request for admissions contained no stated period for response to avoid the "deemed admitted" provision of the rule. Without such groundwork, plaintiff can hardly claim any benefit from delay in response. Furthermore, no effort was made to obtain a favorable ruling as a result of delay or failure to swear to the initial response.

■ The second response, quoted supra, was sworn to by counsel for the defendants. Ordinarily, the verification of such a response should be by the party himself (if an individual) or, in case of a firm or corporation, by the officer, agent or employee having most comprehensive knowledge of the facts. Again, no complaint was made in the Trial Court as to verification by counsel, therefore complaint cannot be made for the first time on appeal.

Plaintiff next complains that defendants failed to make a full disclosure of facts or reasons why facts could not be admitted. Again, no complaint was made to the Trial Court before trial; and further, the second response of defendants, in the main, appears to be as full and candid as the nature of the case permitted.

Specifically, plaintiff complains of the failure of defendants to admit request No. 4, supra. In paragraph 2 of their first response, supra, defendants admitted a break in their gas main *after* the explosion. Defendants had no information that the main was broken *before* the explosion, because it was not unearthed and examined until after the explosion. Furthermore, admission No. 4 is inextricably bound to admissions Nos. 1 and 2 which state that the explosion and fire were the result of gas which leaked from defendant's main. This is denied by defendant. The words "the gas which escaped from the main" in admission No. 4 refer unquestionably to the gas which caused the fire and explosion (admissions Nos. 1 and 2). Therefore, defendants could not concede admission No. 4 without admitting that their gas main broke *before* the explosion *and* that gas from that break caused the explosion and fire.

■ Even though circumstantial evidence may strongly indicate the truth of a proposed fact, there is no duty on the part of a party to admit the truth of such fact, especially where such party relies upon other circumstances to disprove the proposed fact. The theory of defendants was that the explosion and fire resulted from a leakage of gas inside plaintiff's house for which defendants would not be liable. Me-

ter readings showing an unusual volume of gas use for the period were relied upon as a circumstance to support this theory.

■ Plaintiff next complains that defendants failed to concede proposed admission No. 6 to the effect that defendants had no record of certain inspections. The proposed admission is somewhat imperfect by the use of the indefinite date, 19___. Also, there is no record that plaintiffs challenged the failure to respond in any proper manner. Rule 36.01, supra, provides that upon failure to respond within a designated time, the matters "shall be deemed admitted." If, therefore, defendant failed to respond properly to any request for admission within a designated time, the remedy of plaintiff would have been a specially requested instruction to the jury to consider that the subject matter of the request "shall be deemed admitted." There is no record that such steps were taken to capitalize upon the failure of defendant to respond. In the absence of such steps to preserve her rights, plaintiff is not entitled to reversal on this ground.

Plaintiff's first assignment of error is respectfully overruled.

■ By her second assignment of error, plaintiff complains of the refusal of the Trial Judge to charge at her request the following:

"I charge you, members of the Jury, that under a doctrine known as res ipsa loquitur, that if you find an explosion has been proved by the Plaintiff and that the origin of the explosion has been established as gas escaping from a gas main under the defendant's exclusive control, the burden of proof then shifts to the defendant to show that it was free of negligence. If you find that the defendant has failed to prove by a preponderance of the evidence that it was free from negligence, then you should return a verdict in favor of the Plaintiff, Mrs. Scarbrough. Chattanooga Gas Company

v. Underwood, 38 Tenn.App. 142, 270 S. W.2d 652, 658."

The charge as submitted was not a correct statement of the law. In Chattanooga Gas Co. v. Underwood, supra, this Court said:

"(7–9) While not an insurer, the defendant was under a duty to use reasonable diligence in the inspection of its pipes, mains and connections, and the fact that the leaks from which the gas escaped could have been discovered by the exercise of reasonable diligence previous to the explosions was sufficient, under the circumstances, to charge the defendant with negligence. Nashville Gas & Heating Co. v. Phillips, 17 Tenn. App. 648, 69 S.W.2d 914; 38 C.J.S., Gas, § 42(b), p. 733; 24 Am.Jur., Sec. 26, p. 683. Furthermore, under the doctrine of res ipsa loquitur, the explosions having been proved and the origin having been established as gas escaping from a main under defendant's exclusive control, the burden shifted to the defendant to show freedom from negligence. 24 Am.Jur. Secs. 59, 60, pp. 701, 702.

"In Cleveland Gas Co. v. Woolen, 30 Tenn.App. 282, 205 S.W.2d 754, 757, this Court, quoting from C.J.S., said: ' "In an action for injury resulting from an escape or explosion of gas, the burden of proof rests on plaintiff to prove the facts constituting his cause of action. Hence plaintiff must prove that the cause of the injury was escaping gas, that such gas belonged to defendant company, that it escaped through the negligence of the company, that it accumulated in the place where the injury occurred, and that defendant's negligence proximately caused the damage. *It is not necessary, however, for plaintiff to show how the gas became ignited.*" (Emphasis supplied.) 38 C.J.S., Gas, § 47c(1), [p. 745].'

"(10) After a careful review of the record, we have concluded that the evi-

dence adduced substantially meets the foregoing requirements, and the above assignments are accordingly overruled." 38 Tenn.App., pp. 156, 157, 270 S.W.2d p. 658.

In the present case, the evidence was controverted as to whether the exploding gas reached plaintiff's house from the break in defendants' main. In Chattanooga v. Underwood, supra, this Court found that such fact had been "established."

Again, the requested instruction in the present case states, "the *burden of proof* then shifts to the defendant . . . "; whereas the opinion in Chattanooga v. Underwood states, "the *burden* shifted. . . . " The latter expression, "burden," refers to the burden of proceeding which does shift to the defendant when plaintiff has offered prima facie evidence to support his suit. The former expression, "burden of proof" includes not only the initial burden of offering prima facie evidence, but also the ultimate "burden of pursuasion" *at the conclusion of all evidence.* Plaintiff's special request would have improperly shifted the ultimate "burden of pursuasion" to the defendant contrary to a number of Tennessee authorities.

■ In Ford v. Roddy Mfg. Co., 60 Tenn.App. 495, 448 S.W.2d 433 (1969), this Court held that the primary function of the res ipsa loquitur doctrine is to determine whether the evidence justifies submission of the case to the jury; that the doctrine furnishes a permissible, but not compulsory inference of negligence; and that when all the evidence is concluded, it is for the jury to determine the facts from all the evidence, giving such weight as it sees fit to the inference permitted by the doctrine.

Many other cases describe the effect of the doctrine as an inference. Among these are Hudson v. Stepp, 54 Tenn.App. 640, 393 S.W.2d 301 (1965); Davis v. Sparkman, 55 Tenn.App. 65, 396 S.W.2d 91 (1964); Sullivan v. Crabtree, 36 Tenn. App. 469, 258 S.W.2d 782 (1953); and

Poor Sisters of St. Francis v. Long, 190 Tenn. 434, 230 S.W.2d 659 (1950).

In McCloud v. City of LaFollete, 38 Tenn.App. 553, 276 S.W.2d 763 (1955), this Court said that the doctrine merely permits the jury to consider and choose the inference of negligence in preference to other inferences.

In Oliver v. Union Transfer Co., 17 Tenn.App. 694, 71 S.W.2d 478, this Court held that the burden of proving negligence remains on the plaintiff throughout the case, and the application of the doctrine of res ipsa loquitur shifts the "burden of going forward" to the defendant.

Accordingly, it would have been error for the Trial Judge to charge that, upon the application of the doctrine of res ipsa loquitur "the burden of proof then shifts."

Moreover, the concluding sentence of the requested charge is erroneous in its context. Read alone and unrestricted by any condition such as "if you shall so find," or "in such event," said sentence directs a verdict in favor of plaintiff unless defendant shows freedom from negligence by a preponderance of the evidence. This, of course, is not the law in Tennessee. Memphis St. Ry. Co. v. Cavell, 135 Tenn. 462, 187 S.W. 179 (1916); Noland v. Freeman, 53 Tenn.App. 644, 385 S.W.2d 310 (1964); Chattanooga-Dayton Bus Line v. Lynch, 6 Tenn.App. 470 (1927).

■ Refusal to charge a special request is not reversible error unless the request is accurate and complete. Morton v. Martin Aviation Corp., 205 Tenn. 41, 325 S.W.2d 524 (1959); Jenkins v. Perry, 52 Tenn. App. 576, 376 S.W.2d 726 (1963) and authorities cited therein.

The second assignment of error is respectfully overruled.

■ The third assignment of error, that the verdict was contrary to the law and the evidence, is not proper for consideration by this Court. Greer v. Underwood, 62 Tenn.App. 225, 461 S.W.2d 35

(1970); Rogers v. Murfreesboro Housing Authority, 51 Tenn.App. 163, 365 S.W.2d 441 (1962); Lyman v. American Nat'l. Bk. & Trust Co., 48 Tenn.App. 328, 346 S.W.2d 289 (1961) and authorities cited therein.

■ The fourth assignment of error is as follows:

"The Court erred in not holding that Defendants' counsel acted prejudicially by insulting, abusing and improperly attacking the expert witness of the Plaintiff."

The record of the questioned language of defense counsel has been examined. It is not entirely free of intemperate language, and, at times should have occurred out of the presence of the jury. However it is explainable by intense zeal in supporting a litigant's rights in court and is not of sufficient gravity to merit mistrial (if such had been requested) or reversal on appeal.

Plaintiff's fourth assignment of error is respectfully overruled.

Plaintiff's fifth assignment of error complains of the following portions of the argument of defense counsel to the jury:

"The next thing she has to prove is: I'm going to try to get through, Bob. You let me know if I don't in time. (To a Juror).

"And the next thing—How am I doing, Bob? JUROR: Pretty good.

(To juror): Am I through, Bob?"

The former Canons of Professional Ethics of the American Bar Association, as adopted by the Supreme Court and studied by most present practitioners, contained the following:

23

*Attitude Toward Jury*

"All attempts to curry favor with juries by fawning, flattery or pretended solicitude for their personal comfort are unprofessional. Suggestions of counsel, looking to the comfort or convenience of jurors, and propositions to dispense with argument, should be made to the Court out of the jury's hearing. A lawyer must never converse privately with jurors about the case; and both before and during the trial he should avoid communicating with them, even as to matters foreign to the cause."

The new Code of Professional Responsibility of the American Bar Association, as adopted by the Supreme Court and presently in effect in Tennessee, contains the following:

"*EC 7–36* Judicial hearings ought to be conducted through dignified and orderly procedures designed to protect the rights of all parties. Although a lawyer has the duty to represent his client zealously, he should not engage in any conduct that offends the dignity and decorum of proceedings. While maintaining his independence, a lawyer should be respectful, courteous, and above-board in his relations with a judge or hearing officer before whom he appears. He should avoid undue solicitude for the comfort or convenience of judge or jury and should avoid any other conduct calculated to gain special consideration.

.   .   .   .   .   .

"(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:

.   .   .   .   .   .

(6) Engage in undignified or discourteous conduct which is degrading to a tribunal.

.   .   .   .   .   .

(B) During the trial of a case:

(1) A lawyer connected therewith shall not communicate with any member of the jury."

In 88 C.J.S. Trial § 158, pp. 305, 306, is found the following:

"Counsel should conform their conduct to the law which they assist in administering, and should scrupulously avoid whatever does not contribute to the proper purposes of the trial. Particularly they should avoid conduct which might tend improperly to influence a jury."

"*Relations with jurors.* Counsel should not engage in any conduct in connection with a juror or jurors which is improper and may prejudice the jury; and he should scrupulously refrain from any conduct which would seem to place a juror under any obligation to him, either express or implied."

In 53 Am.Jur., Trial, Section 459, pp. 360, 361, is found the following:

"Other instances of misconduct are the wilful bringing in or attempting to bring in of irrelevant, previously excluded, or incompetent evidence for the purpose of prejudicing the opposing party; the exhibiting to the jury of objects or items not introduced as evidence; addressing a juror individually or by name during his argument;"

In 55 A.L.R.2d 1198, is found a comprehensive annotation of cases on the subject which almost unanimously condemn remarks and appeals to individual members of the jury as "reprehensivle," "intolerable," and "improper." A few decisions have reversed for such conduct, especially where there was no rebuke and warning to the jury. Most instances of such conduct have been held to be not reversible error under the circumstances.

In the present case, the gravity of addressing an individual juror is compounded by the use of a given, or first name, which is widely recognized as a symbol of familiarity, uncharacteristic of the detached positions of counsel and juror.

■ Defense counsel insists that his remark to the juror related to the time of completion of argument, and there is some corroboration of this insistence in the remarks, quoted supra. However, there can be no valid justification for any expressed solicitude for the jury as a whole, much less that of a single juror, and by first-name-familiarity.

It is recognized that the dignity and decorum of trials varies in the various communities of the State, and no insistence is now made that any court or its bar is required to conform to any restrictive or unnatural standards. However, a reasonable minimum of decorum and detached objectivity is conceived to be necessary to the orderly and efficient administration of justice and the maintenance of a public attitude of respect for and confidence in the decisions of our courts.

■ The record in this case discloses no objection or other effort during the trial to restrain the conduct of counsel or to request admonition or a mistrial. Under these circumstances, this Court does not consider that the conduct merits reversal.

Plaintiff's fifth assignment of error is respectfully overruled.

■ Plaintiff's sixth, and last, assignment of error is based upon an affidavit of a law clerk employed by plaintiff's counsel that, during the trial of this cause, he overheard one member of the jury say to another juror:

"I cannot tell who insures who in this case."

There is no record that this information was in any way conveyed to the Trial Judge or that any motion for mistrial or

other relief was made until after the verdict was rendered.

In Claiborne v. Solomon, 187 Tenn. 634, 216 S.W.2d 339 (1949), a juror made an improper comment upon the evidence and plaintiff made no motion for a mistrial until after the jury had decided the case against her. The Supreme Court held that plaintiff waived her rights by failure to report the misconduct and promptly move for a new trial.

It has been said that a party may not reserve an observed irregularity as insurance against an adverse decision, but must take advantage of the irregularity at the time. Any other rule would permit a party to conceal irregularities in order to preserve a favorable decision and belatedly reveal the same if to his advantage to do so.

In this view of the matter, it is unnecessary to consider the legal effect of the remark of the juror; however, it is not regarded as being prejudicial per se; and, in the absence of a showing of actual prejudice and effect upon the result, the occurrence is not ground for reversal. Sec. 27–117, T.C.A.

■ The evidence makes out a strong circumstantial case for the plaintiff. Even though the members of this Court may not necessarily agree with the factual conclusions reached by the jury, this Court does not re-weigh the evidence, and if some material and substantial evidence supports the verdict, it must be affirmed. Osborne v. Frazer, 58 Tenn.App. 15, 425 S.W.2d 768 (1968).

The verdict and judgment dismissing plaintiff's suit are affirmed with costs on this appeal taxed against the plaintiff-appellant.

Affirmed.

SHRIVER, P. J. and PURYEAR, J., concur.