BILL WALT CO., et al., Appellants,

v.

The GAS SERVICE
COMPANY, Respondent.

No. WD 37651.

Missouri Court of Appeals,
Western District.

Nov. 4, 1986.

As Modified Dec. 18, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 23, 1986.

Application to Transfer Denied
Feb. 17, 1987.

Don B. Roberson, Kansas City, for appellants.

Philip J. Adams, Jr., Daniel L. Fowler, Kansas City, for respondent.

Before CLARK, C.J., and TURNAGE and KENNEDY, JJ.

KENNEDY, Judge.

Plaintiffs, owner-occupant and tenant respectively of a building at 6122 Troost Avenue in Kansas City, appeal from an adverse judgment in a claim against the Gas Service Company for damage from a fire allegedly caused by Gas Service's negligence in failing to discover and repair a natural gas leak. The trial court sustained defendant's motion for a directed verdict at the close of plaintiffs' evidence. The correctness of that ruling is the question before us on this appeal.

We conclude that the trial court erred in sustaining defendant's motion for a directed verdict. We reverse the judgment and remand the same for a new trial.

The building in question had originally been a frame two-story structure with a basement. In 1958 an L-shaped masonry addition was added along the west and south sides of the frame structure. The addition was built upon a concrete slab which was on the same level as the basement floor of the frame building. It extended up two stories, the floor of its upper story being level with the first floor of the frame building and its roof on a level with the floor of the second story of the frame structure. The top (second) story of the frame house thus extended above the top of the addition.

The two structures did not have common walls but were separated by a chase from 12 to 18 inches in width, extending from the ground upward to the top of the masonry addition. The chase was enclosed at both ends and at the top.

Plaintiff Corbin operated a plating and polishing shop on the first floor of the addition, while the rest of the building(s) was occupied by a dental laboratory of owner plaintiff Bill Walt Co.

The fire occurred on December 20, 1975. It began in the second floor ceiling of the masonry addition and was accompanied by an explosion which blew out the second floor windows.

As early as March of 1975,[1] the occupants of the building and their customers had detected the odor of gas. They had complained to Gas Service repeatedly. Gas Service employees had made three calls in response to the complaints, but had been unable to locate any leak.

Other evidence will be noted in connection with the discussion of the various points.

I

In reviewing the court's ruling sustaining a motion for a directed verdict, we take only the evidence favorable to plaintiffs and inferences favorable to plaintiffs, disregarding evidence and inferences there-

---

1. The gas leak was noticed during and after a construction project of Kansas City Power & Light Co. in front of plaintiffs' building, which involved extensive heavy-duty excavation. Plaintiffs originally included KCP & L as defendants on the theory that their construction caused the gas leak. The trial court directed a verdict for KCP & L at the close of plaintiffs' evidence and the ensuing judgment has not been appealed.

from which are favorable to defendants. *Meridian Interests, Inc. v. J.A. Peterson Enterprises, Inc.*, 693 S.W.2d 179, 182 (Mo. App.1985); *Sigmund v. Lowes*, 236 S.W.2d 14, 16 (Mo.App.1951). Viewing it in that way, the evidence made a submissible case for plaintiffs against the defendants. In recounting the evidence, we will include certain testimony of expert witness Robert Bayles which, as we hold in the Section III of our opinion, was improperly excluded. *See Hurlock v. Park Lane Medical Center, Inc.*, 709 S.W.2d 872, 876 (Mo.App. 1985).

Gas Service says that there was no evidence of a gas leak which resulted in the fire. The evidence on this point, in addition to what has been previously stated, was as follows:

After the fire Robert Bayles, a mechanical and electrical consulting engineer, who was experienced in the investigation of fires and their causes, inspected the scene of the fire. On the basis of his observations, he testified that the fire had its beginning in the ceiling of the second floor of the masonry addition, and that the fire was accompanied by an explosion. By use of a combustible gas detector (a gas "sniffer") he determined there was no gas leakage at any of the gas appliances, at the meters, or at the pipes other than those under the concrete slab floor. He then conducted a "shut-in" test. In a "shut-in" test, all the gas appliances are shut off, and notice is taken whether gas continues to flow through the meter. If it does, of course, a gas leak is indicated. In the shut-in test conducted by Bayles, one of the two meters, the right-hand meter, showed that gas was still going through it at the rate of .5 cubic feet in a one-minute and forty-five second interval, although the furnace and water heater connected to it were shut off. From this, Bayles determined that there was a leak in the pipe between the gas meter and the two appliances. This pipe ran beneath the concrete slab from a point near the meter to a point near the furnace and hot water heater. The meters were side by side on the ground floor of the addition, and the furnace and water heater

served by the right-hand meter were also located on the ground floor of the addition. Bayles gave it as his opinion (improperly excluded by the trial court, as we shall hereafter show) that the gas leaking from this pipe had seeped into the chase and, being lighter than air, had risen to the sealed top of the chase. From there, unable to rise farther and following the path of least resistance, it had ventilated into the ceiling of the masonry addition and had pocketed there, where it had been ignited by some means. (The possibility that gas could have escaped from a leaking pipe under the slab and found its way into the chase was confirmed by Dr. Kurata, a chemical engineer. He was not asked about the other matters included in Bayles' opinion.)

We will note and briefly answer certain Gas Service arguments which, it says, rob the Bayles opinion of probative value:

*That no igniting agent was identified.*

■ To establish liability of a gas company for damages resulting from a natural gas fire or explosion, it is not necessary for a plaintiff to identify a source of ignition. *Scarbrough v. City of Lewisburg*, 504 S.W.2d 377, 382 (Tenn.Ct.App.1973); *Grings v. Great Plains Gas Company*, 260 Iowa 1309, 152 N.W.2d 540, 544 (1967). *See generally* 26 Am.Jur.2d Electricity, Gas, & Steam, § 262 (1966).

*That the conditions were not the same after the fire, when Bayles conducted his inspection and tests, as they had been at and before the time of the fire.*

■ There was evidence that the fire and the explosion had not affected the gas system piping and that the salient conditions were not substantially changed thereby. This made the Bayles test results admissible. *Salsberry v. Archibald Plumbing & Heating Co.*, 587 S.W.2d 907, 912 (Mo.App.1979).

*That in view of the numerous possibilities for the origin of the fire—arson, and the presence of flammable liquids and various Bunsen burners, torches, furnaces and ovens used in the dental labo-*

*ratory—it was speculative to fix the gas explosion as the cause of the fire.*

Bayles testified that he had considered the various possible origins for the fire other than the gas accumulation, and had found no evidence that any of them had anything to do with starting it.

■ Furthermore, the plaintiffs' evidence need not exclude all other possible causes for the fire in order to make a submissible case. When substantial evidence has been presented to support the causal link between the gas leak and the fire, other possible causes become a matter of defense. *Stevens v. Raney,* 520 S.W.2d 615, 618 (Mo.App.1975); *Joiner v. Kurt's Chip-A-Way Park, Inc.,* 510 S.W.2d 773, 775 (Mo.App.1974).

*That the Bayles opinion was contrary to physical laws.*

■ In order to deny to evidence all probative value on the ground it is contrary to physical laws, the evidence must be inherently impossible or absurd. *Davis v. F.M. Stamper Co.,* 347 Mo. 761, 148 S.W.2d 765, 769 (1941). *Accord Vaeth v. Gegg,* 486 S.W.2d 625, 628 (Mo.1972). That cannot be said of Bayles' opinion. *Golden v. National Utilities Co.,* 356 Mo. 84, 201 S.W.2d 292 (Mo.1947).

*Dulansky v. Iowa-Illinois Gas & Electric Co.,* 10 F.R.D. 566 (S.D.Iowa 1950), and *Svenson v. Mutual Life Insurance Co. of New York,* 87 F.2d 441 (8th Cir.1937), cited by Gas Service for its position, are not in point.

■ The plaintiffs' evidence recounted above made a prima facie case that the fire was caused by escaping gas, and entitled the plaintiffs to go to the jury.

## II

Gas Service does not really challenge the proof of its own negligence in failing to detect the gas leak, content to rest upon its contention that the plaintiffs failed to prove there was any gas leak or, if there was a leak, that they failed to prove the escaped gas caused the fire. We will point out in passing, though, the following evidence of Gas Service's negligence:

When a Gas Service representative made one of the service calls in response to the complaints about the gas odor, he noted—as did Bayles in his test conducted after the fire—that the gas continued to flow through the right-hand meter when the furnace and hot water heater served by it were shut off. He assumed, erroneously, that the gas lines to the two meters were interconnected. He did not attempt a shut-in test on the left-hand meter, because there was work in progress on the second floor of the addition which would have been ruined if the gas appliances had been shut off. Where a gas leak was suspected and all gas appliances could not be shut off in order to conduct a shut-in test, Gas Service's customer service manual provided that gas service to the building was to be continued only with supervisory approval. No such supervisory approval was obtained and gas service to the building was continued. No shut-in test was attempted on either of the other two service calls made by Gas Service.

## III

The trial court as noted above excluded the opinion testimony of expert witness Robert Bayles. Appellant claims this ruling was erroneous, and we agree.

Bayles gave his testimony as a part of an offer of proof:

It's my opinion that the origin of this fire was in the ceiling and roof joist system of the second floor of the new addition, at a point where I found maximum damage to have occurred to combustibles used in construction. That is my opinion as to origin.

My opinion as to cause is based upon the fact that I know there was an intense fire at this location. An intense fire requires three parameters to make it possible. One is oxygen, which is present in this area. The second is fuel load, which we have in the form of wood joists. The third requirement is, of course, heat, an intense source of heat. It is my opinion

that natural gas accumulated beneath the floor slab of the first floor and was discharged horizontally up the vertical chase to ventilate into the joist cavity.

That this accumulation of natural gas was subsequently ignited, as substantiated by resulting combustion as well as by the fact that the windows blew out at the second floor and the window frames were distorted from an obvious explosion, and that this process resulted in the ignition of the joist systems and the subsequent fire.

Gas Service's challenge of Bayles' qualifications to give the foregoing testimony was sustained by the trial court. Gas Service in its brief here says:

> Bayles' lack of qualification as an expert in this case centers on his inability to testify as an expert on the subject of the propensities and properties of natural gas in an open environment as opposed to a closed environment such as a piping system. As his own testimony reveals, qualification on this subject was essential in order to proffer an opinion that a gas leak was the cause of this fire.

Bayles, however, a mechanical and electrical engineer, had over a period of 30 years as an independent consulting engineer investigated more than 300 fires, most of which involved evaluation of gas systems as the cause of the fire. Twenty-five or thirty of these had been determined to have been caused by explosion or ignition of natural gas or propane. Bayles had attended and had taught seminars on electrical and mechanical causes of fires. "Mechanical causes" included natural gas leaks, he testified, for it involved the piping system. He had training and practical experience regarding the propensities and characteristics of natural gas.

■ While the trial court has a certain range of discretion in determining whether a witness is qualified to give opinion testimony as an expert, we hold that Bayles was so clearly qualified to give the excluded opinion testimony that it was an abuse of discretion for the trial court to exclude it on the ground of his lack of qualification.

*See Cohen v. Archibald Plumbing & Heating Co.,* 555 S.W.2d 676 (Mo.App.1977); *McConnell v. Pic-Walsh Freight Co.,* 432 S.W.2d 292 (Mo.1968); *Fair Mercantile Co. v. St. Paul Fire & Marine Insurance Co.,* 237 Mo.App. 511, 175 S.W.2d 930 (1943).

The various arguments which are advanced by Gas Service against the admissibility of the opinion go rather to its weight and credibility. *Golden v. National Utilities,* 356 Mo. 84, 201 S.W.2d 292, 295–96 (1947).

Judgment reversed and cause remanded for new trial.

All concur.