HERMAN H. LEWIS *v.* JAMES F. ROBY.

January Term, 1907.

Present: ROWELL, C. J., TYLER, MUNSON, WATSON, and POWERS, JJ.

Opinion filed January 19, 1907.

*Husband and Wife—Action for Alienating Wife's Affection by Adultery—Evidence—Mitigation of Damages—Instructions—Husband's Prior Destruction of Wife's Affection—Effect—Petition for New Trial—Newly Discovered Evidence.*

In an action for alienating the affections of plaintiff's wife by committing adultery with her, it was proper to refuse defendant's requested instruction to the jury that, if the affections of plaintiff's wife were not alienated by any act of defendant, plaintiff could not recover; and that, if plaintiff's wife's affections for him had been destroyed by his own conduct, there was nothing to be alienated by defendant's adultery with her.

The unhappy relations existing between plaintiff and his wife prior to the alienation, the want of affection between them, and plaintiff's negligence and immorality, go only in mitigation of damages, not in bar of the action.

The court correctly instructed the jury that the only question was whether defendant had committed adultery with plaintiff's wife; that plaintiff's neglect of his wife would not justify that act; that nothing would be a bar to that tort, except plaintiff's consent thereto.

If the verdict of a jury can be supported on any rational view of the evidence, it should stand. It never has been considered a sufficient ground for a new trial that the verdict is against the preponderance of the evidence, or that the court from a consideration and examination thereof might have arrived at a different result.

On a petition for a new trial on the ground of newly discovered evidence, brought by the defendant in an action for alienating the affections of the plaintiff's wife by committing adultery with her, affidavits accompanying the petition examined, and *held* insufficient, and that the petition be dismissed.

CASE for alienating the affections of the plaintiff's wife by committing adultery with her. Plea, the general issue. Trial by jury at the June Term, 1905, Windsor County, *Haselton,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The defendant also brought a petition for a new trial, under V. S. 1662, to the May Term, 1906, of the Supreme Court for the county of Windsor, on the ground of newly discovered evidence. This petition was heard with defendant's exceptions at the October Term, 1906, on testimony taken and filed. The opinion fully states the case.

*Davis & Davis,* and *Fred H. Spaulding* for the defendant.

Newly discovered evidence, even on a point litigated at the trial, has been held sufficient to warrant a new trial. *Hurd* v. *Barber,* Brayt. 170; *State* v. *Cox,* Brayt. 171.

Contradictory evidence by the same witness at different times may be sufficient to warrant a new trial. *State* v. *Powers,* 72 Vt. 175; *State* v. *Fogg,* 74 Vt. 62, 67; *Durkee* v. *Fessenden,* Brayt. 167.

*J. C. Enright, Fred C. Davis,* and *E. R. Buck* for the plaintiff.

The law presumes that adultery has alienated a wife's affections from her husband. 9 Ency. of law (1st Ed.) 834, 835.

The newly discovered evidence revealed by the affidavits attached to the petition for a new trial, is cumulative evidence merely. *Dodge* v. *Kendall,* 4 Vt. 31; *Bullock* v. *Beach,* 3 Vt. 73; *Kirby* v. *Waterford,* 14 Vt. 414; *Bradish* v. *State,* 35 Vt. 452; *Knapp* v. *Fisher,* 49 Vt. 94.

TYLER, J. This action is brought for the alleged alienation by the defendant of the plaintiff's wife's affections by seducing and having sexual intercourse with her. The exceptions are to the refusal of the court to charge as the defendant requested and to some portions of the charge as given.

The defendant's 5th and 7th requests were as follows and were not complied with:

"If the jury find from the testimony that the affection or love of Effie E. Lewis was alienated from her husband by his own conduct, absence, neglect or other acts, and not by any act of defendant, the plaintiff cannot recover in this action."

"That if the jury find from the testimony that the plaintiff's acts, conduct, abuse or neglect contributed in bringing about any alienation of the affections of his wife (if such affections were in fact alienated), then the plaintiff cannot recover."

The defendant insists that if the affections of the plaintiff's wife were not alienated from him by any act of the defendant the plaintiff cannot recover; that if the wife's affection for her husband had been destroyed by his own conduct, there was nothing to be alienated by the defendant's adultery with her.

The defendant was not entitled to have the jury instructed as requested.   The instruction was correct, that the only question was whether or not the defendant had sexual intercourse with Mrs. Lewis, as alleged; that the plaintiff's neglect of his wife would not justify the act, if committed; that nothing would then be a bar to an action for the tort except the plaintiff's consent thereto.   This has long been the rule of the common law—some authorities say "from time immemorial." Blackstone says, Vol. 3 p. 139, that for criminal conversation with a man's wife, "considered as a civil injury (and surely there can be no greater), the law gives a satisfaction to the husband in an action of trespass."   *Brown* v. *Spaulding,* 63 N. H. 622, 4 Atl. 394.   *Weeden* v. *Timbrel,* 57 T. R. 357, cited by the defendant, supports this doctrine.   21 Cyc. 1626; 8 Am. & Eng. Ency., tit. Criminal conversation.   The point made by the defendant's 5th and 7th requests has been before courts in other jurisdictions.   In *Dallas* v. *Sellers,* 17 Ind. 479, it was held that though the wife has no affection for her husband, another person has no right to interfere to cut off all chance of its springing up in the future.   This is the doctrine in *Prettyman* v. *Williamson,* 12 Del. 224, 39 Atl.

731, and it was recognized in *Fratini* v. *Caslim,* 66 Vt. 273, 29 Atl. 252; *Cross* v. *Grant,* 62 N. H. 675.

Evidence of unhappy relations existing between husband and wife prior to the alienation, want of affection between them, the husband's negligence or immorality, can only be shown in mitigation of damages. The rule of law and the reason of it are well stated in the text in 8 Am. & Eng. Ency. 461: "Marriage is an institution of society having its foundation in a civil contract which imposes upon the parties certain duties and invests them with corresponding rights. A fundamental right which flows from this relation, and one which the well-being of society requires should be maintained inviolate, is that of exclusive marital intercourse which each acquires with the other. It follows, then, that whoever commits adultery with either of the parties, commits a trespass upon the rights of the other."

*Judgment affirmed.*

## PETITION FOR NEW TRIAL.

The plaintiff based his right of action upon proof of the defendant's adultery with his wife, and for that proof he relied upon the testimony of his father, Henry Lewis, and that of Alexander Everett in respect to seeing the defendant and Mrs. Lewis on several occasions go to her room together and hearing their voices there. The witness Cole testified that he saw them on the evening of August 21, 1904, in the act of adultery, but the alleged act was after the suit was brought, and the evidence was offered and admitted, not as furnishing a ground of recovery, but to show an adulterous disposition between the parties and to make it probable that on the oc-

casions testified to by the other witnesses they were in Mrs. Lewis' room for a criminal purpose.

I.   In support of the petition for a new trial the affidavits of Mrs. Lewis, George Ely and his wife are produced, which are in substance that Mrs. Lewis was not at her own house on the evening of August 21, that she went to the house of Mr. Ely before dark and remained there that night.   Mrs. Lewis testified at the trial that Cole told her on an evening that some men were around her house and that she requested him to engage some one to assist him to watch and ascertain what it was for; that *she* discovered people around her house and that she went out and fired her revolver two or three times. In another connection she testified that she went to the Elys and stayed several nights and that she went "at the time they were watching," evidently meaning that night.   Cole and the defendant testified that they watched the house for a while, then met at a point near the house, separated, and, as Roby testified, went to their respective homes.   Cole testified that he went to Mrs. Lewis' house and from the porch, through an open window, saw Roby and Mrs. Lewis in criminal intercourse.

Witnesses are liable to be mistaken about dates.   If on this occasion Mr. and Mrs. Ely chanced to be mistaken about Mrs. Lewis going there before dark, then she may have been at her own house for a while in the evening—as she testified she was and that she fired her revolver there—and have then gone to Ely's house and stayed that night.   Mrs. Lewis does not say that she went to Ely's house before dark.   Cole may have been mistaken about the day of the month and correct about the main facts in his testimony.   The time was immaterial except as it affected the reliability of his testimony.

In a new trial this newly discovered evidence would fall short of proving an *alibi.*

2.    The affidavit of Whitcomb is that Cole related to him the events of the evening in question and only stated that he went into Mrs. Lewis' house after the watching and found Roby sitting there with Mrs. Lewis, and that he spoke of no improper conduct between them. Cole makes affidavit that he related to Whitcomb all that he testified to at the trial, so the two affidavits are at variance. But if the affidavit of Whitcomb is literally true, there is not enough relative to the circumstances in which the incidents were related by Cole, nor of the relations existing between him and Whitcomb for us to decide that the story he then told was so contradictory of his testimony given at the trial that his testimony in another trial would be likely to be affected by it.

3.    Henry Lewis testified at the trial that he had seen the defendant and Mrs. Lewis go to her room together twenty-five to thirty times. At the trial for divorce held at the next term of court he said ten or fifteen times. It was a loose way of testifying about so grave a charge as adultery, but the witness evidently meant to be understood that he had seen them go to her room together many times. There is not such a discrepancy in the testimony given by Lewis at the two trials as would warrant setting the verdict aside.

4.    The fact that the plaintiff failed to obtain a bill of divorce from his wife for adultery with Roby does not help to support this petition. Each case was tried upon the evidence there presented. The only question now is whether the newly discovered evidence is sufficient to warrant the granting of a new trial. Mrs. Lewis and Roby denied the charge of adultery fully and explicitly. Mrs. Lewis testified upon every point in the case, including the alleged occurrences

of August 21, but her own testimony made it possible that Cole's testimony was true. His story, as we read it, seems improbable, but the jury heard and saw the witnesses upon this and all other branches of the case, and the question of fact was for their decision. They may have disbelieved Cole, whose testimony, as before stated, was introduced only to show the adulterous disposition of the parties, and found a verdict upon the other evidence.

The rule is: "If the verdict can be supported upon any rational view of the evidence, it should stand; and it never has been considerd a sufficient ground for a new trial that the verdict is merely against a preponderance of the testimony, or that the court from a consideration and examination of the testimony might have arrived at a different result." See *Thayer* v. *Cen. Vt. R. R. Co.*, 60 Vt. 214, 13 Atl. 859, and cases cited in the opinion.

*Petition denied.*