JOHN FRED SHEDRICK v. WILLIAM N. LATHROP.

February Term, 1934.

Present: SLACK, MOULTON, and THOMPSON, JJ., and SHERMAN and STURTEVANT, Supr. JJ.

Opinion filed May 1, 1934.

*Ernest E. Goodrich* and *Finn & Monti* for the defendant.

*Lawrence F. Edgerton* for the plaintiff.

SHERMAN, Supr. J. This is an action in tort brought to recover damages for the alienation of the affections of plaintiff's

wife by adultery. The jury returned a verdict for the plaintiff. The defendant thereafter moved to set aside the verdict. This motion was overruled and exceptions taken by defendant. During the trial the defendant also had exceptions to the admissibility of certain evidence.

Plaintiff's evidence tended to show his marriage to wife in 1916, that they lived on a small farm with title thereto in wife's name upon which a house and barn had been built by their joint efforts, also their joint efforts had paid for an additional small piece of land with its title, likewise, in wife's name. There was no serious trouble between them, and their relations were pleasant. Plaintiff worked on the farm and away from home part of the time, taking or sending his wages home. The wife helped with work on the farm. In 1926, the plaintiff was in a hospital. On returning home from this hospital, he found defendant with plaintiff's wife on this farm. He ordered the defendant to leave and was told by wife that not the defendant but plaintiff was going, that she was going to keep the defendant. Plaintiff left the next day.

In 1927, the defendant and plaintiff's wife went through a marriage ceremony in New Hampshire; thereafter, she went by the name of Mrs. Lathrop and they lived openly as husband and wife. Both were arrested for adultery in 1928. The wife was tried, convicted, and sentenced. At the time trial of defendant was started and before any evidence had been introduced, being on bail, the defendant (there, respondent) fled to New York. He testified that he believed himself better off there than in attendance upon his trial. After the wife was released from imprisonment, the defendant returned to her and they lived together until he was again arrested in 1930. Some three or four weeks after this arrest, defendant was sent to the State Hospital for the Insane, and later discharged therefrom. The defendant was the beneficiary of the income from a trust fund of about $40,000 and owned some real estate of small value. Doctor Green, called by the defendant, testified, in cross-examination, that defendant knew the difference between right and wrong at times, at least. Adultery was admitted by the defendant. He claimed he was insane and believed that the woman was not lawfully married to plaintiff but was lawfully

married to himself. (This latter as bearing on the question of exemplary damages.)

Recovery was limited to acts committed within six years of the time suit was brought. The issue of insanity was submitted only on the question of exemplary damages.

Plaintiff's counsel asked defendant, in direct examination: "When you went back to the farm to live with Olga, in 1930, you knew she had been convicted of adultery with you, didn't you?"

■ Against the objection and exception that the record was the best evidence and was available, the defendant answered: "Yes, I knew she had been shut up." This question did not call for the fact of conviction, but for defendant's knowledge, and was material on the question of exemplary damages as bearing on defendant's belief that his marriage to plaintiff's wife was lawful.

■ In cross-examination of defendant by plaintiff's counsel, defendant was asked: "Where did you go?" (This had reference to the time he did not appear at his trial after it opened.) Subject to the objection and exception that it was incompetent and immaterial, the witness answered: "I went to the State of New York."

■ ■ Flight of an accused is admissible as evidence of guilt. *State* v. *Taylor*, 70 Vt. 1, 12, 39 Atl. 447, 42 L. R. A. 673, 67 A. S. R. 648; Underhill's Criminal Evidence (3rd ed.), § 203, and cases there cited. Whether the question was proper to show reason why defendant was not convicted (which was the offer made), it is unnecessary to decide because the evidence was otherwise admissible. *Donovan* v. *Towle*, 99 Vt. 464, 467, 134 Atl. 588. Its admission, in any event, was harmless, as adultery had been previously admitted by defendant.

■ In cross-examination, defendant further was asked: "When you were arrested in 1928, and appeared for trial, were you represented by counsel, did you have a lawyer?" And subject to the objection and exception that the court records were the best evidence, defendant answered: "I got a lawyer, after the, — a fashion, but had very hard work to get a lawyer." Again defendant was asked: "When you came up for trial at the June term, 1928, did you or your attorney representing you, to your knowledge, make any claim of insanity?" Same objec-

tion and exception as above. Defendant answered: "No." It had already appeared the defendant left the State after his trial had commenced but before any evidence had been introduced or any defense made. Whether in either instance this was error or not, it does not appear defendant was harmed.

The defendant filed a motion to set aside the verdict. Stated separately in the motion, the grounds briefed and here relied upon are in substance that the verdict was not warranted by the evidence; that it was contrary to, unsupported by, and against the weight of the evidence; that the amount thereof, $1,280, was excessive; and that by reason of the insanity of defendant exemplary damages were not recoverable.

The defendant in his brief contends that this motion should have been granted for the reasons that the plaintiff alienated his wife's affections before she met defendant; and that the plaintiff did not prove he had suffered any financial loss; and, further that the defendant was insane when he committed adultery with the plaintiff's wife, and, hence, could form no intent; and, therefore, that nominal damages at most could be recovered, and that exemplary damages should not have been awarded.

█ As to defendant's claim that because of the previously lost affections of the wife, the plaintiff would be entitled to only nominal damages, we quote from *Lewis* v. *Roby,* 79 Vt. 487, 490, 65 Atl. 524, 525, 118 A. S. R. 984: "Though the wife has no affection for her husband, another person has no right to interfere to cut off all chance of its springing up again." And in the same case at page 491 of 79 Vt., 65 Atl. 524, it is held that: "Evidence of unhappy relations existing between husband and wife prior to the alienation, want of affection between them, the husband's negligence or immorality, can only be shown in mitigation of damages." Such is the law, *Miller* v. *Pearce,* 86 Vt. 322, 325, 85 Atl. 620, 43 L. R. A. (N. S.) 332, and cases there cited.

We will now consider the claim that plaintiff did not show financial loss and its bearing, if true, on the question of compensatory damages and as to whether other than nominal damages could be awarded.

█ Where adultery is proved or admitted, as in this case, loss of *consortium* is conclusively presumed. *Miller* v. *Pearce,* 86 Vt. 322, 328, 85 Atl. 620, 43 L. R. A. (N. S.) 332.

To quote from that case: ''The only difference between alienation by persuasion and alienation by adultery is that in the former you must prove loss of *consortium,* while in the latter the law conclusively presumes it.'' Loss of *consortium* is the gist of an action for alienation in either case. The law is that if a defendant alienates the affections of plaintiff's wife by committing adultery with her, the plaintiff is entitled to recover compensatory damages for loss of *consortium*. *Lewis* v. *Roby, supra,* 79 Vt. 490, 65 Atl. 524, 118 A. S. R. 984; *Jenness* v. *Simpson,* 84 Vt. 127, 141, 78 Atl. 886; *Fratini* v. *Caslini,* 66 Vt. 273, 275, 276, 29 Atl. 252, 44 A. S. R. 843; *Daley* v. *Gates,* 65 Vt. 591, 593, 27 Atl. 193. The last case defines *consortium* as the conjugal society, affection, and assistance of the spouse.

Insanity of the defendant is no defense to the award of compensatory damages. An insane person is liable in damages for his torts. *Morse* v. *Crawford,* 17 Vt. 499, 44 A. D. 349; Cooley on Torts (4th ed.), § 65; *Seals* v. *Snow,* 123 Kan. 88, 254 Pac. 348, 51 A. L. R. 829, and note. Though, in this case the question of insanity was only submitted with reference to exemplary damages.

The court will not usually interfere with the verdict unless it clearly appears the damages found are excessive or inadequate where the damages are unliquidated and there is no legal measure thereof, as here, so the amount is for the legal discretion and judgment of the jury. *Woodhouse* v. *Woodhouse,* 99 Vt. 91, 157, 130 Atl. 758.

It is hard to conceive of a case of this character even though, as here, adultery only be relied upon wherein actual damages would be limited to a nominal sum. The instant case certainly is not such a one notwithstanding the period of recovery was limited to acts within six years of time suit was brought. In this case, within that time, after the wife had been convicted and served a sentence for a like offense with this defendant, the latter returned and lived openly for six months with the wife in the house the plaintiff helped build.

The defendant does not claim exemplary damages are never recoverable in an action of this kind, but makes the claim he was insane and hence could not have had an intent. We assume he means the malice which is required to authorize a jury to award such damages.

The question whether the defendant knew what he did was wrong was submitted to the jury and properly. Some of the evidence for the jury's consideration on this point was that defendant knew the difference between right and wrong, at times, at least; that he fled the jurisdiction at the time the wife was convicted of adultery, and when his trial had just commenced, because he thought himself better off out of the State than in court.

██ ██ In motions of this kind, the evidence must be viewed in the light most favorable to the plaintiff. *Woodhouse* v. *Woodhouse, supra,* page 155 of 99 Vt., 130 Atl. 758. In determining exemplary damages, the jury may consider the legal malice and wantonness of the act, and the financial ability of the defendant. *Woodhouse* v. *Woodhouse, supra,* page 155 of 99 Vt., 130 Atl. 758.

██ ██ Exemplary damages, where they can be allowed, are, as to amount, largely in the discretion of the jury. *Woodhouse* v. *Woodhouse, supra,* page 155 of 99 Vt., 130 Atl. 758. And in *Button* v. *Knight,* 95 Vt. 381, at page 387, 115 Atl. 499, 502, the Court well said: ''The nature of the action is such as to justify such damages in most, if not all, cases. Men who pay their addresses to other men's wives usually know what they are doing and how their conduct comports with the proprieties, both legal and moral; and, to quote from *Mathies* v. *Mazet,* 164 Pa. 580, 30 Atl. 434: ''It will be an evil day to the cause of justice and good morals' when the principles upon which punitive damages are sustained in such cases are abandoned.''

██ ██ It cannot be said that the verdict for $1,280 was manifestly excessive either as to actual or exemplary damages, and this verdict could, and very likely does, include both. The ground of the motion that the verdict was against the weight of the evidence was addressed to the sound legal discretion of the trial court and is not reviewable here unless a lack of such discretion or a legal abuse thereof is shown. There was no abuse or lack of discretion and no error. Other grounds of the motion were not briefed, but they were without merit.

*Judgment  affirmed.*