SWEENEY v. CARTER.—137 S. W. (2d) 892.

Middle Section. December 2, 1939.

Petition for Certiorari denied by Supreme Court, March 2, 1940.

C. H. Rutherford, H. B. Weimer, and Elliott Simrell, all of Nashville, for A. L. (Irene) Carter.

Jeff McCarn and O. W. Hughes, both of Nashville, for A. Letty Sweeney.

FELTS, J. Mrs. Carter sued Mrs. Sweeney for criminal conversation and alienation of her husband's affections. There was a verdict for her for $4,000. The trial judge suggested a remittitur of $2,500, which Mrs. Carter accepted under protest, and judgment was entered for her for $1,500. Both parties appealed in error.

■■ Mrs. Carter's assignments of error complain of the remittitur. The only case in which one may accept a remittitur under protest so as to save the question for appellate review is where the remittitur is suggested by the trial judge because he thinks the verdict is so excessive as to indicate passion, prejudice, corruption, partiality, or unaccountable caprice on the part of the jury. Code, sec. 8987. Since the record does not show that the remittitur was suggested upon that ground, Mrs. Carter's acceptance of the remittitur bound her, her protest was unavailing, and her assignments must be overruled. Yarbrough v. L. & N. R. R. Co., 11 Tenn. App. 456, 457, 460; Chumley v. Anderton, 20 Tenn. App. 621, 103 S. W. (2d) 331; Harrison v. Graham, 21 Tenn. App. 189, 107 S. W. (2d) 517.

While this suit was pending, Mrs. Sweeney was adjudged by the County Court of Davidson County to be a person of unsound mind, and Wiley C. Wilson was appointed and qualified as her guardian. On August 12, 1938, the suit was revived against the guardian, and thereafter it proceeded to trial, with the result above stated. The guardian has joined Mrs. Sweeney in this appeal in error. The first assignment of error is that there is no evidence to support the verdict. The evidence for plaintiff tends to prove these facts:

Plaintiff, Mrs. Irene Carter, and A. L. Carter were married in Chattanooga in 1919. One child, a boy, was born of this marriage. About 1922 or 1923 A. L. Carter left his wife and child and came to Nashville. She obtained a divorce from him upon the ground of abandonment and failure to provide. In October, 1926, she came to Nashville and they were remarried. Two children were born of this marriage. For a while A. L. Carter and his wife and children lived with his father. Later they lived in a house he rented on Buchanan Street. In the summer of 1935 he moved his family into a "barn" on a tract of 17 acres of land, located in the 14th District of Davidson County, near the Tuberculosis Hospital, which he had previously contracted to buy and to pay for at the rate of $25 per month. A few months after moving to this place he left his wife and children; and they have been living on this place ever since, while he has been living somewhere in Nashville. He appears to be still keeping up the monthly payments on the place.

From the time he came to Nashville he seems to have had no regular employment. For a while he ran a garage. Later he worked for the

railroad, but had no regular job. Then for a while he and one J. W. Yearwood ran a detective agency on Deaderick Street in Nashville. Owing to unfavorable publicity in the newspapers they had to quit this business. When he moved away from the house on Buchanan Street he left some unpaid rent, which he discharged by voluntary bankruptcy. Up to the time he left his wife and children sometime in 1935, he supported them; but sometime thereafter (date not appearing) she brought proceedings against him in the Juvenile Court and by that means has been collecting from him "Ten dollars on the 10th and 23rd of the month."

He first met Mrs. Sweeney about July, 1935. She and her husband had been divorced; and she was running an undertaking business at 209 Woodland Street, Nashville. She employed Carter to collect accounts and rentals on her real estate. He later began working on her automobiles, driving her ambulances, and doing other work around her undertaking establishment. He was employed by her for about a year. During this period he spent much of his time in association with Mrs. Sweeney, going places with her in her automobile and staying around the funeral home. She lived in the same building in which she conducted her undertaking business. On the first floor were her funeral parlor, embalming room and office; and her bedroom adjoined her office and embalming room. On the second floor were the kitchen, dining room and other bedrooms.

Mrs. Carter testified she became suspicious of her husband's conduct with Mrs. Sweeney and that on one occasion she caught the 9 P. M. bus, rode into Nashville, went to the rear of the undertaking establishment and waited and watched for sometime; that about 11 P. M. the telephone or doorbell rang and the light in the bedroom was turned on, and through the window she saw her husband and Mrs. Sweeney get off the bed and begin dressing. She says she did not interfere or call an officer or any other person, but "left when they began dressing."

■ While this story is not convincing, it was in a general way corroborated by other witnesses who testified to circumstances indicating that an adulterous relation was going on between Carter and Mrs. Sweeney during the latter part of 1935 and up to about the time this suit was brought July 28, 1936. The credibility of Mrs. Carter and these other witnesses was a matter for the jury.

Its appear that Mrs. Sweeney was present at the trial, but she did not testify. It is said her condition was such that she could not testify. The only evidence adduced for her was the testimony of two doctors who said she was of unsound mind and several of her neighbors who gave her a good reputation for chastity and veracity.

The main insistence under the first assignment of error is that Mrs. Sweeney was insane during the period of her association with Carter and that her insanity is a defense to this suit.

■ An insane person is liable in tort for compensatory damages,

where express malice or evil intent is not a necessary element of the tort. Ward v. Conatser, 63 Tenn. (4 Baxt.), 64; 14 R. C. L., 596, 597; 13 C. J., 749, 750; 1 Cooley on Torts (4 Ed.), sec. 65; Annotation, 51 A. L. R., 833; compare Liability in Tort of Infants and Insane Persons by Francis H. Bohlen, 25 Mich. Law Rev., 9, reprinted in Studies in the Law of Torts, 543-576; Mr. Justice Holmes, The Common Law, 109. It has been held that insanity is a defense to an action for slander (Bryant v. Jackson, 25 Tenn. (6 Humph.), 199), libel or malicious prosecution (1 Cooley on Torts (4 Ed.), p. 192; 14 R. C. L., 587), but not to an action for alienation of a wife's affections by adultery. Shedrick v. Lathrop, 106 Vt., 311, 172 A., 630.

 Where malice or evil intent is a necessary ingredient of the tort, it would seem that the test of civil liability should be the same as that of criminal responsibility which is whether the defendant had capacity and reason sufficient to enable him to distinguish between right and wrong as to the particular act he was then doing—a knowledge and consciousness that the act he was then doing was wrong and criminal, and would subject him to punishment. Bond v. State, 129 Tenn., 75, 165 S. W. 299; Watson v. State, 133 Tenn., 198, 211, 180 S. W., 168, 172; McElroy v. State, 46 Tenn., 442, 449, 242 S. W., 883, 885.

The trial judge submitted the defense of insanity to the jury. His charge on this question was in part as follows:

"The court charges you that if you find from a preponderance of all the evidence in the case that at the time of the matters complained of the defendant was a person of unsound mind to such an extent as to be incapable of having malice or improper motives toward plaintiff, and her marital rights, then your verdict should be for the defendant. . . ."

 No complaint is made of this charge. But it is insisted that the evidence so conclusively established that defendant was insane during the time in question that the jury's verdict to the contrary is without any evidence to support it. We do not think the evidence established that, during the period of Mrs. Sweeney's intimacy with Carter, she did not have capacity and reason sufficient to understand and appreciate the nature and quality of the acts for which she is sued. During this period she was operating her business, and was apparently sane. From a minute entry in this case on August 12, 1938, it does appear that she had been adjudged a person of unsound mind and a guardian had been appointed for her. Also there is copied into the transcript what purports to be the verdict of a jury and the judgment of the county court on an inquisition of lunacy of June 6, 1938, finding and adjudging Mrs. Sweeney to be a person of unsound mind, without sufficient capacity to govern herself and her property, and that she had been in this condition "for two years,

known.'' But this does not appear to have been introduced in evidence, and is not a part of the technical record or the bill of exceptions. But if we could look to this, it would only be prima facie evidence that she was of unsound mind during the two years overreached by it, i. e., from June 6, 1936, to June 6, 1938. Bond v. State, 129 Tenn., 75, 165 S. W., 229; Pritchett v. Plater & Co., 144 Tenn., 406, 232 S. W., 961. The acts herein complained of began in July, 1935, and continued for nearly a year before the period covered by this finding. Prior to that period the presumption was that Mrs. Sweeney was sane. While the two doctors, who were general practitioners, expressed the opinion that she had been insane for years, neither of them ever examined her before December, 1936, nearly six months after this suit was commenced; and neither of them stated the nature of her trouble or the extent of her insanity, or gave any facts or circumstances indicating that, during the period involved, she did not have capacity and reason sufficient to enable her to distinguish between right and wrong in respect of her illicit relation with Carter. So we think the issue of whether she was insane to the degree which would preclude culpability on her part was properly submitted to the jury, and that there is evidence to support the verdict. Compare Shedrick v. Lathrop, 106 Vt., 311, 172 A., 630.

The second assignment of error complains of the amount of the verdict. There can be no fixed rule for determining the amount of damages recoverable in an action like this. It is primarily a matter for the jury, and after they have fixed the amount and the trial judge has exercised his discretion and approved such amount, or as in this case suggested a remittitur to .reduce it to what he thinks a proper amount, this court will not disturb it unless it is unreasonably excessive. We do not think it is in this case. See Stepp v. Black, 14 Tenn. App., 153; Darnell v. McNichols, 22 Tenn. App., 287, 22 S. W. (2d), 808.

The third, fourth and fifth assignments complain of the court's refusal to charge certain instructions requested by defendant. While these instructions appear in the motion for a new trial, they are not part of the bill of exceptions. On a suggestion of the diminution of the record, a supplemental transcript is brought up, in which these requested instructions are contained, but this does not show they were made a part of the bill of exceptions. Each request appears to have been filed and identified by the trial judge, the identification being ''Identified, Dews, Judge,'' without date and without anything to indicate that it was intended to be an exhibit to, or a part of, the bill of exceptions. Such an identification was insufficient to make it a part of the bill of exceptions. Central Produce Co. v. General Cab Co., 23 Tenn. App., 209, 129 S. W. (2d), 1117, and cases there cited. Appended to the supplemental transcript is a certificate of the clerk in which he undertakes to certify that ''the

foregoing is a true and correct copy of certain papers attached to and forming part of the bill of exceptions;" that "the bill of exceptions, including the attached papers, was at the time of filing properly authenticated by the trial judge, Hon. Richard P. Dews;" and that "said papers were inadvertently omitted from the transcript." Authentication of a bill of exceptions is a judicial act which can be performed only by the trial judge; and it can not be left to the clerk to determine what is or not a part of the bill of exceptions or whether it is properly authenticated; and such a certificate as that which the clerk here undertakes to make is a nullity and will be disregarded. Cosmopolitan Life Ins. Co. v. Woodward, 7 Tenn. App., 394, 402, 408, 409, and cases there cited. For these reasons we cannot consider the third, fourth and fifth assignments.

The sixth assignment is that the court erred in charging the jury as follows: "I charge you that actual adultery is difficult to prove because the parties thereto generally exercise the precaution to conceal themselves as that it will not be known. But the plaintiff is not required to bring up actual testimony. It can be shown by circumstances, but the circumstances must be convincing."

The complaint is against the phrase, "actual testimony." We think the meaning of the two sentences, the one in which this phrase appears and the one that follows, was that plaintiff was not required to bring direct testimony to prove adultery, but might prove it by circumstantial evidence, provided the circumstances were convincing. We do not think this phrase could have mislead the jury or prejudiced defendant.

All the assignments of error are overruled, and the judgment of the circuit court is affirmed.

Judgment will be entered in this court in favor of Mrs. A. L. (Irene) Carter against Mrs. A. Letty Sweeney and her guardian, Wiley C. Wilson, for $1,500, with interest from the date of the judgment below, and all costs of the case. Judgment for the costs for this appeal in error will also be entered against the surety on her appeal bond.

Faw, P. J., and Crownover, J., concur.