Walter Hay, Regina Abruntilla as Guardian for Mary Hay and
David Hay, b/n/f Walter Hay v. Medical Center Hospital
of Vermont, Bonnie Fifield and Shelly Howard

[496 A.2d 939]

No. 83-225

Present: Hill, Underwood, Peck and Gibson, JJ., and Larrow, J.
(Ret.), Specially Assigned

Opinion Filed April 26, 1985

534

*Putter & Unger Associates*, Montpelier, for Plaintiff-Appellant.

*Spencer R. Knapp* of *Dinse, Allen & Erdmann*, Burlington, for Defendant-Appellee Medical Center Hospital.

*R. Allan Paul* and *Robert S. DiPalma* of *Paul, Frank & Collins, Inc.*, Burlington, for Defendants-Appellees Howard and Fifield.

**Underwood, J.** This case presents this Court with a question we have not heretofore had an opportunity to consider: does a minor child have a cause of action for the loss of consortium of a parent who is alive, but who is alleged to be permanently comatose? We hold that such a cause of action does exist and therefore reverse the decision of the trial court denying such a cause of action.

Plaintiffs allege that Mary Hay was injured on July 7, 1980, while at the Medical Center Hospital of Vermont, and that, as a result of those injuries, she became permanently comatose.

A complaint was filed by Regina Abruntilla, in her capacity as guardian for Mary Hay, alleging that Mary Hay's injuries were proximately caused by the negligence of the defendant hospital and nurses and requesting recovery of damages suffered as a result thereof.

Walter Hay, husband of Mary Hay, also filed a complaint, which complaint included a cause of action for loss of spousal consortium. He filed a motion for joinder of his suit with the cause of action commenced on behalf of Mary Hay; the court granted the motion.

Thereafter Walter Hay, as father and next friend of David Hay, minor son of Mary Hay, filed a complaint for his son's loss of parental consortium, seeking damages resulting from (1) deprivation of the physical, moral and intellectual training of David's mother, and (2) deprivation of the affection, society, love, protection and companionship of David's mother. Walter Hay also filed on that same day a motion, on behalf of his son David Hay, to be joined as a party plaintiff in the original suit by Regina Abruntilla, guardian for Mary Hay.

We note that the claims filed by Walter Hay, individually, and by Walter Hay, on behalf of his son, David, insofar as they relate to damages for loss of spousal and parental consortium, though independent causes of action, are each derivative of the underlying claim of Mary Hay, and therefore the viability of each of these damage claims is wholly dependent upon Mary Hay's cause of action against these same defendants.

The trial court denied David Hay's motion for joinder on the ground that "a minor has no recognizable cause of action for damages for loss of physical training, moral training, intellectual training, affection, society, love, protection, and companionship from a living parent who was allegedly rendered totally disabled through the negligence of the defendants."[1]

---

[1] It is assumed by the trial court in its legal conclusions, and by the litigants in their pleadings, briefs and oral arguments, that Mary Hay has not deceased and is therefore not legally dead even though she remains in a permanently comatose condition. See 18 V.S.A. § 5218 (Supp. 1984).

Later, the trial court converted its denial of David Hay's motion for joinder into a final order. V.R.C.P. 54(b). David Hay filed a timely appeal from that final order.

I

■ We must first decide whether we will judicially recognize a minor child's cause of action for a claimed loss of parental consortium when the parent has been tortiously injured but has not deceased. It is clear that recovery of a loss of consortium is an action recognized at common law.[2] *Whitney v. Fisher*, 138 Vt. 468, 470, 417 A.2d 934, 935 (1980); *Baldwin v. State*, 125 Vt. 317, 320, 215 A.2d 492, 494 (1965) (overruled on other grounds, *Whitney, supra*, 138 Vt. at 472, 417 A.2d at 936).

■ As an element of common law, the doctrine permitting recovery for loss of spousal consortium was initially created and developed by courts of law. *Berger v. Weber*, 411 Mich. 1, 17, 303 N.W.2d 424, 427 (1981); *Theama v. City of Kenosha*, 117 Wis. 2d 508, 521, 344 N.W.2d 513, 519 (1984). In the context of the present contested cause of action, we agree with the Wisconsin Supreme Court when it stated:

> [T]he rule denying recovery for the loss of society and companionship was created by the courts and not the legislature, and it is, therefore, as much our duty as the legislature's to change that law if it no longer meets society's needs.

*Theama, supra*, 117 Wis. 2d at 519, 344 N.W.2d at 518; accord *Ferriter v. Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 516, 413 N.E.2d 690, 695–96 (1980); *Ueland v. Reynolds Metals Co.*, 103 Wash. 2d 131, 135, 691 P.2d 190, 193 (1984). Thus, it is clear that this Court has the authority to make

---

[2] This Court has defined the *common law* term "consortium" as including "plaintiff's right to the affection, conjugal society, assistance, companionship, comfort and services of her husband." *Hedman v. Siegriest*, 127 Vt. 291, 295, 248 A.2d 685, 687 (1968) (citing *Shedrick v. Lathrop*, 106 Vt. 311, 317, 172 A. 630, 632 (1934)). The term, however, was limited to spousal consortium, the only concept of consortium for which the loss could form the basis of recovery at common law. *Whitney v. Fisher*, 138 Vt. 468, 471, 417 A.2d 934, 936 (1980).

changes in the common law, should we deem it appropriate to do so.

## II

In considering the merits of recognizing a child's claim for loss of parental consortium, we first look to analogous areas of existing Vermont law. Under the provisions of Vermont's wrongful death statutes, 14 V.S.A. §§ 1491–1492, a minor child may recover "such damages as are just, with reference to the pecuniary injuries resulting from [the death of a parent] . . . ." 14 V.S.A. § 1492(b) (Supp. 1984). In a case involving minor children whose father had been killed, this Court held that the loss of the children's mental, moral and physical training by their dead father was properly included in the term "pecuniary loss." *Hoadley* v. *International Paper Co.*, 72 Vt. 79, 83–84, 47 A. 169, 171 (1899). Although such a definition of "pecuniary loss" may be more limited than the recovery of "parental consortium" sought by David Hay in the present case, it is inappropriate that a minor child may recover such a loss if a parent is killed, but not if the parent is rendered permanently comatose. Accord *Berger, supra,* 411 Mich. at 15, 303 N.W.2d at 426; *Ueland, supra,* 103 Wash. 2d at 133, 691 P.2d at 192; see also Prosser and Keeton on the Law of Torts § 125, at 936 (5th ed. lawyer's ed. 1984).

David Hay also argues that because either spouse may recover for loss of consortium in the event of the death of the other spouse, a minor child should be able to recover for loss of parental consortium upon the death of either parent. We recognize that there is indeed a difference between spousal and parental consortium:

> Sexual relations [, however,] are but one element of the spouse's consortium action. The other elements—love, companionship, affection, society, comfort, services and solace—are similar in both relationships and in each are deserving of protection.

*Berger, supra,* 411 Mich. at 14, 303 N.W.2d at 426. Not only are the losses suffered by a parent and a child similar in many respects, but the child is in a uniquely difficult position to make up for the loss of a parent.

> [W]hile an adult is capable of seeking out new relationships in an attempt to fill in the void of his or her loss, a child may be virtually helpless in seeking out a new adult companion. Therefore, compensation through the courts may be the child's only method of reducing his or her deprivation of the parent's society and companionship.

*Theama, supra*, 117 Wis. 2d at 516, 344 N.W.2d at 516.

Defendants point out that this Court appears to have rejected the concept of parental consortium. *Whitney* v. *Fisher, supra*, 138 Vt. at 470–71, 417 A.2d at 936; *Baldwin* v. *State, supra*, 125 Vt. at 320–21, 215 A.2d at 494. It must be pointed out that the asserted denial of parental consortium in *Whitney* was contained only in a quoted passage from a dissent by Chief Justice Schaefer in *Dini* v. *Naiditch*, 20 Ill. 2d 406, 433, 170 N.E.2d 881, 894 (1960). Chief Justice Shaefer's dissent was cited in *Whitney, supra*, and *Baldwin, supra*, only insofar as it provided support (in the absence of a statute) for denying a wife recovery for loss of consortium upon the death of her husband. This Court has never denied a child recovery for loss of parental consortium, and to the extent that *Whitney, supra*, implies otherwise, it is in error. We find that prior Vermont law presents no obstacle to our recognition of a cause of action for loss of parental consortium on behalf of the instant minor child.

## III

### A.

The defendants have raised a series of objections to the recognition of the right of a minor child to recover for the loss of parental consortium. The first of these objections concerns whether there is a duty on the part of the defendants to the minor child of the plaintiff. The defendants contend that recovery for loss of parental consortium is precluded by the fact that the injury to the minor child is too remote, and therefore unforeseeable. In support of this contention, defendants cite *Vaillancourt* v. *Medical Center Hospital of Vermont, Inc.*, 139 Vt. 138, 425 A.2d 92 (1980); *Guilmette* v. *Alexander*, 128 Vt. 116, 259 A.2d 12 (1969); and *Savard* v. *Cody Chevrolet, Inc.*, 126 Vt. 405, 234 A.2d 656 (1967). These cases are dis-

tinguishable, however, in that the basis for recovery in each of those cases was the negligent infliction of mental or emotional distress. Such a cause of action involves a direct relation between the tortfeasor and the victim; there must be a duty on the part of the tortfeasor, running to the victim. As stated earlier, consortium claims may be initiated independently by either spouse but are derivative actions and are therefore distinguishable from the underlying negligence claims in the principal action. See *Guilmette, supra,* 128 Vt. at 117, 259 A.2d at 13 ("The right to recover for negligence is based upon a breach of duty owing to the plaintiff and does not accrue derivatively."); see also Love, *Tortious Interference with the Parent-Child Relationship: Loss of an Injured Person's Society and Companionship,* 51 Ind. L.J. 590, 628–33 (1976). To the extent that our characterization of this claim for loss of consortium as a derivative action is inconsistent with *Baldwin, supra,* 125 Vt. at 319, 215 A.2d at 493–94, that case is specifically overruled.

The instant case involving loss of consortium is a derivative action, where David Hay's classification as a "secondary tort victim" makes his recovery dependent upon the success of his mother's underlying tort claim. The question of remoteness concerns only the relationship between the tortfeasor and the "primary tort victim." *Berger, supra,* 411 Mich. at 15–16, 303 N.W.2d at 426–27; *Theama, supra,* 117 Wis. 2d at 527, 344 N.W.2d at 522. We also note that we see little difference in terms of remoteness between the situation of a spouse seeking to recover for loss of consortium, and that of a minor child similarly seeking recovery for loss of consortium.

## B.

Defendants also raise several potential procedural problems. The first of these problems is the possibility of increased litigation as a result of such recognition. It is axiomatic that whenever a new cause of action is recognized, there is the potential for increased litigation. Making the courts available for the consideration of such claims is the natural object of such recognition. In an era of ever-increasing caseloads in both the trial and appellate courts of this state, and where our society is being increasingly criticized for its pro-

pensity for litigation, the recognition of a new cause of action is not a step which we take lightly. However, it is the rights of the new class of plaintiffs, and the desire to see justice made available within our legal system, which are of paramount importance. "The rights of a new class of tort plaintiffs should be forthrightly judged on their own merits, rather than engaging in gloomy speculation as to where it will all end." *Berger* v. *Weber*, 82 Mich. App. 199, 210, 267 N.W.2d 124, 129 (1978) (footnote omitted), *quoted in Berger, supra,* 411 Mich. at 14–15, 303 N.W.2d at 426; *Ueland, supra,* 103 Wash. 2d at 135, 691 P.2d at 193. However, our holding in the present case is restricted to allowing minor children to recover for loss of parental consortium.

■ Defendants also object on the ground that recognition of the contested cause of action will result in multiple lawsuits arising from the same incident, because the various minor children and other recognized plaintiffs could bring independent lawsuits. We agree that this could present a problem, and we therefore hold that a minor child's claim for the loss of parental consortium must be joined with the injured parent's claim whenever feasible. Accord *Ueland, supra,* 103 Wash. 2d at 135–39, 691 P.2d at 193–94.

A further objection arising out of the possibility of multiple claims for loss of parental consortium concerns the threat to family harmony where each plaintiff acts to maximize his or her own recovery. Such a problem would be exacerbated where the defendant's insurance coverage and assets were insufficient to satisfy all damage awards. This problem, however, is no different than that which arises in other cases involving family litigation, such as wrongful death suits, and we are confident in the ability of the trial courts to minimize the potential for such conflict whenever possible. See, e.g., *Richard* v. *Richard*, 131 Vt. 98, 300 A.2d 637 (1973) (permitting a wife to bring a cause of action against her husband for personal injuries she received, allegedly by reason of his negligence in the operation of an automobile).

## C.

■ Defendants have raised a number of objections based upon problems concerning damages. We agree that damages

for the loss of parental consortium are speculative and uncertain, but this does not provide sufficient grounds for refusal to recognize such a cause of action. Damages for injuries sustained in the present case are no more difficult to ascertain than in other classes of injury, involving intangible loss, where we have allowed recovery. The other causes of action "appear to involve damages which are by nature as intangible as those for the loss of a parent's society and companionship. Yet courts and juries daily assess such uncertainties, with apparent success." *Theama, supra,* 117 Wis. 2d at 522, 344 N.W.2d at 520 (footnote omitted); see also *Berger, supra,* 411 Mich. at 16, 303 N.W.2d at 427; *Ueland, supra,* 103 Wash. 2d at 137, 691 P.2d at 194.

Defendants also claim that monetary damages are an insufficient compensation for a minor child's loss of a parent. We agree that no amount of money can ever take the place of a lost parent. We reject, however, the sentiment, expressed by the California Supreme Court, that recovery for loss of parental consortium "will simply establish a fund so that upon reaching adulthood, when plaintiffs will be less in need of maternal guidance, they will be unusually wealthy men and women." *Borer* v. *American Airlines, Inc.,* 19 Cal. 3d 441, 447, 563 P.2d 858, 862, 138 Cal. Rptr. 302, 306 (1977). Although monetary damages may be an inadequate compensation for the loss of a parent, we are satisfied that monetary damages can help to ease the loss, and should therefore be made available. "Although a monetary award may be a poor substitute for the loss of a parent's society and companionship, it is the only workable way that our legal system has found to ease the injured party's tragic loss." *Theama, supra,* 117 Wis. 2d at 523, 344 N.W.2d at 520; accord *Ueland, supra,* 103 Wash. 2d at 137, 691 P.2d at 194.

Finally, defendants contend that the allowance of a claim for loss of parental consortium will result in a double recovery of damages. The recognition of a separate cause of action on behalf of a minor child, however, will allow juries to properly allocate losses among the separate claims of multiple plaintiffs. We are confident in the ability of the trial court judges to give adequate jury instructions concerning the

computation and allocation of damages, and of juries to follow such instructions. *Ueland, supra,* 103 Wash. 2d at 137–40, 691 P.2d at 194–95; *Theama, supra,* 117 Wis. 2d at 526, 344 N.W.2d at 521–22. The trial courts can protect the record for review by submitting written interrogatories or special verdicts to the jury. In cases where a jury fails to follow a trial court's instructions and returns a verdict with inappropriate damages, the defendants have an opportunity to request the correction of any such error. V.R.C.P. 50, 59 and 60. We also note that the provision for separate recovery for the minor child "guarantees that the award will be utilized for the child's benefit and not by the parent for other purposes." *Theama, supra,* 117 Wis. 2d at 524, 344 N.W.2d at 520–21; accord *Berger, supra,* 411 Mich. at 17, 303 N.W.2d at 427; *Ueland, supra,* 103 Wash. 2d at 139, 691 P.2d at 195.

### D.

Defendants suggest that this Court should defer to the legislature and refrain from recognizing the cause of action at issue in the present case. For the reasons set forth below, we do not feel obliged to await legislative recognition of a cause of action which we find to be appropriate, merely because it is novel. Accord *Ferriter, supra,* 381 Mass. at 516, 413 N.E.2d at 695–96; *Berger, supra,* 411 Mich. at 17, 303 N.W.2d at 427; *Ueland, supra,* 103 Wash. 2d at 135, 691 P.2d at 193; *Theama, supra,* 117 Wis. 2d at 519, 520–21, 344 N.W.2d at 518, 519.

It is the role of this Court to adapt the common law to the changing needs and conditions of the people of this state:

> That court best serves the law which recognizes that the rules of law which grew up in a remote generation may, in the fullness of experience, be found to serve another generation badly, and which discards the old rule when it finds that another rule of law represents what should be according to the established and settled judgment of society, and no considerable property rights have become vested in reliance upon the old rule. It is thus great writers upon the common law have discovered the source and method of its growth, and in its growth found its

health and life. It is not and it should not be stationary. Change of this character should not be left to the legislature.

B. Cardozo, *The Nature of the Judicial Process* 151–52 (1921) (quoting *Dwy* v. *Connecticut Co.*, 89 Conn. 74, 99, 92 A. 883, 891 (1915) (Wheeler, J., concurring)). Thus we reject the proposition of our dissenting colleagues, and the holding of some courts in other jurisdictions, that the legislature and not the courts must formulate a remedy to apply to situations such as the one at bar. See, e.g., *General Electric Co.* v. *Bush,* 88 Nev. 360, 368, 498 P.2d 366, 371 (1972); *Morgel* v. *Winger,* 290 N.W.2d 266, 267 (N.D. 1980).

The argument that this Court should prohibit the present claim for parental consortium from going to a jury because the issue is more appropriate for legislative resolution is wholly unpersuasive; such an argument ignores our responsibility to face a difficult legal question and accept judicial responsibility for a needed change in the common law. This Court has often met changing times and new social demands by expanding outmoded common law concepts. See, e.g., *R. & E. Builders, Inc.* v. *Chandler,* 144 Vt. 302, 476 A.2d 540 (1984) (rejected common law rule that wife's legal existence merged with that of husband); *Hilder* v. *St. Peter,* 144 Vt. 150, 478 A.2d 202 (1984) (implied warranty of habitability in residential issues); *Zaleskie* v. *Joyce,* 133 Vt. 150, 333 A.2d 110 (1975) (expanded common law to include strict products liability); *Richard* v. *Richard, supra* (abrogated rule of interspousal tort immunity); *O'Brien* v. *Comstock Foods, Inc.,* 125 Vt. 158, 212 A.2d 69 (1965) (rejecting privity as a defense for injuries to consumer); *Foster* v. *Roman Catholic Diocese,* 116 Vt. 124, 70 A.2d 230 (1950) (rejected rule that charitable institutions are immune from tort liability).

The foregoing serves to illustrate that this Court has frequently met new and difficult problems head-on, using common law principles. Many of these cases have produced change which would have a profound effect on social and business relationships, such as industry-wide insurance patterns, husband-wife relationships, and lessor-lessee obligations, to mention only the most obvious. When confronted with these difficult and complex issues, this Court did not shirk its duty and

retreat into the safe haven of deference to the legislature. It is the responsibility of the courts to balance competing interests and to allocate losses arising out of human activities. One of the principal purposes of the law of torts is to compensate people for injuries they sustain as a result of the negligent conduct of others. Prosser and Keeton on the Law of Torts, *supra*, § 1, at 6. "[T]he common law, which is judge-made and judge-applied, can and will be changed when changed conditions and circumstances establish that it is unjust or has become bad public policy." *Ontiveros* v. *Borak*, 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983).

When the conditions and needs of a society have changed, judges must adapt the common law to those new conditions. The main characteristic of the common law is its dynamism,

> which allows it to grow and to tailor itself to meet changing needs within the doctrine of stare decisis, which, if correctly understood, was not static and did not forever prevent the courts from reversing themselves or from applying principles of common law to new situations as the need arose.

*Bielski* v. *Schulze*, 16 Wis. 2d 1, 11, 114 N.W.2d 105, 110 (1962) (footnote omitted).

We also realize that in instances where the legislature has acted to change the common law of this state, the question of whether the new cause of action it created fully covers the situation it intended to address is not always certain. For example, in 1977, the legislature expressly authorized a wife to bring an action for the loss of the consortium of her husband. 12 V.S.A. § 5431 (added 1977, No. 43). It did not, however, determine whether a wife could exercise the right to bring such a suit for a cause of action arising *prior* to the effective date of the statute. This Court, in *Whitney* v. *Fisher, supra,* had to grapple with the question of whether the Vermont courts should recognize a cause of action for a wife's loss of spousal consortium where her cause of action arose prior to the enactment of 12 V.S.A. § 5431.

It must also be noted that our recognition of a new cause of action for the loss of parental consortium, as in the present case, in no way precludes the legislature from also

addressing the subject; it is still free to act. The legislature may ratify, limit or reject our holding. See, e.g., *Ferriter, supra,* 381 Mass. at 516, 413 N.E.2d at 696 (quoting *Diaz* v. *Eli Lilly & Co.,* 364 Mass. 153, 166–67, 302 N.E.2d 555, 563 (1973)). For example, 12 V.S.A. § 1037 (acceptance of inherent risks in sports) was a reaction to the verdict in *Sunday* v. *Stratton Corp.,* 136 Vt. 293, 390 A.2d 398 (1978), in which the jury awarded damages to a skier injured in a downhill skiing accident.

### E.

Defendants' final argument is that our recognition of a cause of action for the loss of parental consortium will result in a dramatic increase in insurance premiums. We agree with the Washington Supreme Court when it stated "[t]his is a standard argument raised against expanding any area of tort liability. When considering the recognition of a new cause of action, the spector of increased insurance rates is one of our least concerns." *Ueland, supra,* 103 Wash. 2d at 139, 691 P.2d at 195.

> [W]e believe that any burden to society is offset by the benefit to the child, who through compensation may be able to adjust his or her loss with stability. Ultimately, society will benefit as well, since ideally the child will become a normal adult who is capable of functioning as such in his or her own social setting.

*Theama, supra,* 117 Wis. 2d at 525, 344 N.W.2d at 521 (citing *Berger, supra,* 411 Mich. at 14, 303 N.W.2d at 426).

For the reasons cited herein, we recognize that a minor child has the right to sue for damages for the loss of parental consortium when the parent has been rendered permanently comatase. While we recognize that the weight of legal precedent favors nonrecognition of such a cause of action, we choose to follow what appears to be a growing trend in this area of the law. Whether we are the first state—or the fiftieth state—to adopt a specific legal proposition, our decision inevitably will be based upon what we deem to be in the best interests of justice and of the citizens of the State of Vermont at the time the question is presented to us. See, e.g., *Berger, supra,* 411 Mich. at 12, 303 N.W.2d at 425.

*Reversed and remanded for further proceedings consistent with the views expressed herein.*

**Larrow, J.** (Ret.), Specially Assigned, dissenting. This case is before us under the trial court pleadings. These allege the plaintiff Mary Hay to be permanently comatose as a result of physical injuries inflicted by the defendants. The issue involved in the appeal from dismissal of David Hay's motion for joinder is his claimed right to recover for loss of his mother's consortium. The majority opinion discusses loss of parental consortium at length. Although its specific holding relates to the permanent "brain death" of the mother, its general discussion makes it clear that this is not a sine qua non for liability, and that the Court is adopting a cause of action for a minor's loss of parental consortium, without limitation.

This analysis of the holding elicits my dissent. I am convinced that this action is now one for wrongful death, subject to the statutory provisions of 14 V.S.A. § 1492(b), limiting damages to pecuniary injuries, except "in the case where the decedent is a minor child," where damages for loss of love and companionship may be added. I do not feel this Court can simply ignore the existing statute and the express scope of its permitted recovery in the guise of adopting a "more liberal" rule. The decedent here is Mrs. Hay, not a minor. She is a decedent because 18 V.S.A. § 5218 provides, albeit cruelly, that one in her condition is "dead."

In short, I would affirm the judgment below, because I feel that the type of recovery sought is expressly barred by the Wrongful Death Act, not subject to repeal or amendment by this Court for reasons other than constitutional. The general aspects of the opinion, sweepingly creating a "new cause of action," I cannot concur with, both because I am not convinced of their wisdom and because I do not see them as required for this decision.

Further, although not compelling, I doubt the wisdom of launching a minority doctrine with such uncertain future support.*

---

* The writer of the majority opinion is now retired, succeeded by the trial judge reversed. The present Chief Justice is disqualified by representation of parties below.

. I am authorized to state that Justice Peck joins with me in this dissenting opinion.