Filed 12/08/23


VERMONT SUPERIOR COURT
Caledonia Unit
1126 Main Street Suite 1
St. Johnsbury VT 05819
802-748-6600
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 289-12-19 Cacv

---

**Letourneau et al vs. Claffey**

---

## ENTRY REGARDING MOTION

Title:          Motion for Judgment on the Pleadings to Dismiss Loss of Consortium Claims of
Fawn and Jason Letourneau (Motion: 13)
Filer:          Sara-Ellen M. A. Moran
Filed Date:     October 18, 2023

The motion is DENIED.

Plaintiffs Fawn and Jason Letourneau have brought this action on behalf of their child, LL seeking damages against Defendant Shelia Claffey for injuries and harm suffered by LL allegedly as the result of sexual abuse from an employee working in Claffey's day-care that LL attended and Claffey's failure to supervise.

In addition to the direct claims of abuse and negligence, the Letourneaus seek to recover for the loss of parental or filial consortium. Defendants seek judgment on this claim and dismiss for lack of legal standing to bring such a claim within the parent-child relationship.

Loss of consortium is a derivative claim where certain family members may recover damages against a tortfeasor for the harm they suffered as a result of the harm inflicted on another. *Derosia v. Book Press, Inc.*, 148 Vt. 217, 220 (1987). As a derivative claim, loss of consortium may only be awarded if the direct and primary tort claims are established. Id. The purpose of a consortium claim is to compensate a family member for the loss of society and companionship that they incurred as a result of the injury to the other individual. *Hay v. Medical Center Hosp. of Vermont*, 145 Vt. 533, 536–38 (1985) (noting that consortium covers the loss of sexual relations between spouses but also elements of love, companionship, affection, society, comfort, services, and solace). The claim of loss of consortium may be a statutory claim under 12 V.S.A. § 5431 or a common law claim. *Hay*, 145 Vt. at 536. Most often this claim arises when a spouse is killed in an accident and the surviving spouse seeks compensation for the loss of their partner. Id.

The statutory language of Section 5431 limits loss of consortium claims to spouses and was promulgated in 1977. Other Courts have noted that this statute appears to have been intended to alter the fact that prior Vermont case law had not allowed women to make loss of consortium claims. See *Whtiney v. Fisher*, 138 Vt. 468, 472 (1980) (collecting cases regarding a wife's right to recover on a loss of consortium claim) (overruled, in part by *Hay*, 145 Vt. at 538); *Carter v. Cahill*, 2012 WL 10030824, at *4 (Vt. Super. Mat 17, 2012) (DiMauro, J.) (summarizing pre-statute cases and noting that "A restrained criticism of these cases would be that their underlying assumptions are a little outdated.").

Under *Hay*, Vermont also continues to recognize a common law claim for loss of consortium. 145 V.t at 545. In Hay, the Court expanded the scope of such claims to allow a child to bring a claim for the loss or injury of a parent. Id. ("[W]e recognize that a minor child has the right to sue for damages for the loss of parental consortium when the parent has been rendered permanently comatose.").

Courts have been cautious about expanding consortium claims because they allow parties beyond the individual involved in the underlying tort to claim non-economic damages. See, e.g., *Siciliano v. Capitol City Shows, Inc.*, 475 A.2d 19, 22 (NH 1984) (rejecting an expansion of common law consortium claims to extend to parents for injury to children); see *Scheele v.* Dustin, 2010 VT 45, ¶¶ 15–18 (denying expansion of consortium claims to the loss of a family pet). As the New Hampshire Supreme Court states, "The emotional nature of the loss makes defining and quantifying damages difficult, which may lead to disproportionate awards." Siciliano, 475 A.2d at 22.

The issue before this Court is whether a parent in Vermont can claim loss of consortium for injuries sustained by a child. While there is evidence that parties have made such claims in Vermont, there have been no ruling affirming this practice, formally expanding this doctrine, or extending the Court's reasoning in *Hay*.. See *Stopford v. Milton Town School District*, 2018 VT 120, ¶ 5 (noting that parents' loss of consortium claim for their child were dismissed because of statute of limitations issues). This is not an entirely novel situation. As one treatise has noted, the state of the law in this area is in fluctuation.

> Historically, most jurisdictions which addressed the question whether the parents of a negligently injured child could recover damages for loss of that child's consortium have declined to recognize such a right of recovery. However, an increasing number of courts have recently held or recognized that such losses are recoverable . . . .

*T.R. Smith, Parent's Right to Recover for Loss of Consortium in Connection with Injury to Child*, 54 A.L.R. 4th 112,, at § 2 (1987 and 2023 update). This shifting in reasoning tracks many of the changes that have occurred in society over the last 50 years. Even as late as the 1980s, Courts were still adhering to the question of what economic harm or loss of services a parent might suffer from the loss of or injury to a child. See, e.g., *Siciliano*, 475 A.2d at 22. As one court articulated the analysis:

> Loss of services claimed as damages in case of injury to a wife import more than services in the ordinary sense . . . . Such is not the case in the loss of services of a child. Here, services means the labor and assistance of a child rendered for the father, and imply a loss measured by pecuniary standards of value.

*Smith v Richardson*, 171 So 2d 96, 100 (Ala. 1965). Few parents today would admit to taking such a view of their children. In fact, as the Ohio Supreme Court notes, this view arose from the common law conception that children occupied the same status with regard to the parent as a servant to master. *Gallimore v. Children's Hosp. Med. Ctr.*, 617 N.E.2d 1052, 1056 (Ohio 1993). The Ohio Court goes on to note:

> Times have changed and so should the law. Courts and commentators agree that the master-servant analogy to the relationship between parent and child is long overdue for judicial burial. In the vast majority of modern family situations, children can no longer be considered an economic asset to their parents. The present-day economic burdens of raising children, coupled with child labor laws and mandatory school attendance, virtually ensure that recovery for loss of "services" alone will not adequately compensate the parents of an injured child for the true losses they suffer. Indeed, in these modern times, the society, companionship, comfort, love and solace between parents and their child are the essence of that relationship, more so than the "services" a minor child is capable of rendering to his or her parents.

Id. at 1056–57 (internal citations omitted).[1]

The Court finds the reasoning of the Ohio Supreme Court to be persuasive in this case. Moreover, applying the reasoning of *Hay* leads the Court to the same conclusion. In *Hay*, the Court

---

[1] While not proof of this change described by the Ohio Supreme Court, one could do worse than to consider how the concept of family has evolved from films like Cheaper by the Dozen (20th Century Fox 1950), which focuses on an efficiency expert whose family of 12 children are effectively test subjects for his methods, to Parenthood (Universal Pictures 1989), which offers a view of smaller, more intimate family units but which still connects to a larger extended family, to Everything, Everywhere, All at Once (A24 2022), which focuses on a single child, immigrant family that is cut off from the larger network of family. One can chart the role that the children play in these films, moving from interchangeable side characters to centerstage and, in many ways, a prime reason for the parents' being.

recognizes the special bond between parent and child. 145 Vt. at 537–38. While *Hay* focuses on the child's perspective and the loss of a parent, nothing in its reasoning suggests that the analysis is not equally as strong in the opposite direction. Time has proven the truth of this position. As the Court in *Gallimore* observes, the relationship between parent and child has become closer and more companion-like. The economic benefit side of the equation has all but disappeared from modern family life. While there are still parental–child roles, the emphasis is on family and stability rather than hierarchy and service. Given these changes in attitudes and approaches, it is not unreasonable to conclude that a significant harm to any parent who loses a child or has an injured child is a non-economic arising from a loss of companionship.

At the same time, the Court's decision in this matter is necessarily limited and narrowly focused to the present case for several reasons. Beyond these larger policy and societal trends that drive the Court's recognition in this case of a right for the parents to seek a claim for loss of consortium, there are specific factors that make the application reasonable.

First, and foremost, is the issue of predictability and foreseeability. In *Hay*, defendants raised the concern that allowing a child to seek non-economic compensation would not be foreseeable. 145 Vt. at 538–39. In that case, the defendant, a hospital, that had treated the plaintiff's mother without necessarily knowing she was a mother. Defendants noted that the nature of the mother's relationship with her son could not be known to the hospital, and it would not be on notice of this potential, additional liability. While the Court in *Hay* eventually rejected that argument, the concern is a valid one. In this case, however, the facts demonstrate that any derivative harm claimed by a parent is very foreseeable. By the very nature of daycare, the providers can anticipate that nearly every child in their program will have parents. They will, in fact know these parents who sign their young children up for daycare and pick up and drop them off each day. It is not a stretch to further understand that the parents are likely to have strong relationships with their children and that a loss of consortium claim if the child is injured at the day case will follow. In most cases, the provider will know the parent, will have interacted with them, and will be fully aware that the parent manages the child and provides a close relationship with the child. As such, the Court finds that there is no foreseeability issue if it allows consortium claims for a parent whose child is injured in a daycare setting.

The other concerns of whether allowing such a claim opens the flood gates of litigation, whether money damages promote family healing, or whether money damages are sufficient have all

been answered in *Hays*, and the Court offers no further analysis but adopts the Court's analysis that such concerns are overstated and inconsistent with the fundamental principles of tort law, which posits that some monetary compensation is better than no compensation. *Hay*, 145 Vt. at 541–45.

Finally, the evidence, both in this case and others, that there is a growing practice of adding a loss of filial consortium claim demonstrates that the considerations are not that novel. Such a claim is not shocking to either parties or to courts. It is a reflection of our current views of family, and it is reasonable to recognize these claims and the true harm felt by parents at the loss or injury of a child.

## <u>ORDER</u>

Based on the foregoing, the Court denies Defendant Claffey's motion for judgment and will allow the loss of filial consortium claim to proceed

Electronically signed on 12/8/2023 8:39 AM pursuant to V.R.E.F. 9(d)

Daniel Richardson
Superior Court Judge